139 P.3d 1286

**BOLSER ENTERPRISES, INC.,**
an Arizona corporation d/b/a A–
1 Builders, Plaintiff–Appellant,

v.

**ARIZONA REGISTRAR OF CONTRAC-
TORS,** an Arizona agency; Ray Ford
and Barbara Ford, husband and wife,
Defendants–Appellees.

No. 1CA–CA 05–0355.

Court of Appeals of Arizona,
Division 1, Department B.

July 25, 2006.

Bluff & Associates, By Guy W. Bluff,
Phoenix, for Plaintiff–Appellant.

Byrne, Benesch & Villarreal, PC, By John
S. Garcia, Yuma, for Defendants–Appellees
Ford.

**OPINION**

TIMMER, Judge.

¶ 1 This appeal stems from a decision by
the Arizona Registrar of Contractors
("ROC") to revoke a residential contractor's
license issued to Bolser Enterprises, Inc.,
doing business as A–1 Builders ("Bolser"),
because Bolser performed substandard work
building a garage for Ray and Barbara
Ford.[1] The superior court ruled that it lacked
subject matter jurisdiction to consider Bol-
ser's complaint seeking judicial review of the

1. Ray Ford passed away while this case was  pending in superior court.

ROC's decision and therefore dismissed the complaint. For the reasons that follow, we disagree with the ruling and therefore reverse and remand for further proceedings.

## BACKGROUND

¶ 2 In 2002, Bolser, a licensed contractor, built a garage for the Fords pursuant to the parties' agreement. The Fords, dissatisfied with Bolser's craftsmanship, filed separate complaints with the ROC in 2003 alleging numerous construction deficiencies. After inspections by ROC inspector John Prince, the ROC issued citations and complaints against Bolser in both cases.

¶ 3 After additional events occurred in the cases, which are not relevant to this appeal, an administrative law judge ("ALJ") from the Office of Administrative Hearings ("OAH") conducted a consolidated evidentiary hearing on both complaints on April 27, 2004. The ALJ issued a recommended order in the cases on May 17. Regarding the first complaint, the ALJ found that Bolser had installed one overhang without a signed change order, thereby failing to build the garage as specified, and had additionally failed to rectify the error. With respect to the second complaint, the ALJ found that Bolser had improperly installed shingles and had failed to repair cracked ridge bracing on the garage roof.

¶ 4 In separate orders, the ROC adopted the ALJ's decision and recommended dispositions in both cases. On June 3, the ROC issued an order in the first case stating that Bolser's license would be revoked on July 13 unless before that date Bolser corrected the mismatched overhangs in a workmanlike manner. The order additionally provided that it constituted "a final administrative decision reviewable pursuant to the provisions of [Arizona Revised Statute ("A.R.S.") section 12–901 (2003)]," and that the order would be in full force and effect on July 13 unless a stay order was secured from the superior court on or before that date. Finally, the order advised that if the Fords denied access to the property, thereby preventing Bolser from performing the corrective work, the ROC would deem Bolser in compliance with the order, and the case would be closed without discipline.

¶ 5 On June 4, the ROC issued an order in the second case stating the Bolser's license would be revoked on July 14 unless before that date Bolser fixed the shingles and cracked ridge bracing in a workmanlike manner. The order also provided that any request for rehearing must be filed on or before July 9 and that any appeal to the superior court, and attendant request for a stay order, must be filed on or before July 14. As in the June 3 order, the ROC informed the Fords that if they denied Bolser access to the property, the ROC would deem Bolser in compliance with the order, and the case would be closed without discipline. Finally, the ROC assessed a $200 civil penalty against Bolser.

¶ 6 Bolser did not appeal the June 3 or June 4 orders, electing to proceed with the corrective work. After securing a time from the Fords to access the property, Bolser informed the ROC that the required work would begin on June 14.

¶ 7 On June 17, Bolser filed notices of compliance in both cases, stating that it had complied with the ROC's June 3 and June 4 orders and enclosing payment of the $200 civil penalty.[2] The ROC notified the Fords by letter dated June 21 that Bolser had filed a notice of compliance in the first case and that the Fords had ten days from that date to file a response or objection.[3] The record does not reflect that the Fords filed any

---

2. Although Bolser filed a notice of compliance in the first case, it appears that notice was in error. First, the notice states that Bolser complied with the June 3 order by performing the work required by the June 4 order. Second, according to a document and accompanying affidavit filed by Bolser on August 9, Bolser submitted the notice of compliance on June 17 because it believed that the Fords did not want any work done on the overhangs in light of a prior communication from their counsel, and therefore no work was required under the June 3 order. Upon learning that the Fords indeed wanted Bolser to correct the overhangs, Bolser performed the work on July 1 but did not resubmit a notice of compliance with the ROC.

3. The record before us does not show that the ROC advised the Fords of the notice of compliance filed in the second case.

response or objection to either notice of compliance. Documents filed by Bolser on August 9 and 27, however, state that the Fords filed objections and notices of noncompliance on July 21, well after the ten-day deadline imposed by the ROC.

¶ 8 On September 20, Bolser objected to John Prince continuing to serve as the ROC's inspector in both cases due to an alleged bias stemming from Prince's former employment with Bolser. Also on that date, Prince conducted a compliance inspection. Prince found that Bolser had sufficiently corrected the ridge bracing and some of the shingles problem. Prince concluded, however, that the overhang correction did not meet workmanship standards and that Bolser had failed to properly nail some shingles. The record does not reflect that the ROC ruled on Bolser's objection to Prince's role as inspector.

¶ 9 On October 13, Bolser requested a hearing on the compliance report and requested a stay of discipline. Bolser also reiterated its objection to Prince serving as the inspector. The record does not reflect a ruling on this request.

¶ 10 On January 13, 2005, Prince conducted another inspection. His subsequent report reflected that the overhang remained in the same condition as noted in the September 20 inspection, one shingle remained damaged, and some caulking of nails was excessive and did not meet workmanship standards. On January 27, the ROC notified the parties by form letter (the "January 27 disciplinary notice" or "notice") of its decision to revoke Bolser's license effective that day "in compliance with the Decision and Order" in both cases. The notice further enclosed a form permitting the Fords to apply to recover monies from the residential contractors' recovery fund established by A.R.S. § 32–1132 (Supp.2004).

¶ 11 On February 2, Bolser filed a complaint in superior court appealing the ROC's disciplinary decision in both cases. The Fords moved to dismiss the complaint on the ground that Bolser's untimely appeal deprived the court of subject matter jurisdiction. The ROC appeared as a nominal party

and joined the Fords' position. The Fords and ROC asserted that Bolser's complaint was defective because Bolser had not appealed from the June 3 and June 4 orders and the January 27 disciplinary notice was merely an administrative action that implemented the prior orders and was therefore not susceptible to judicial review. Following oral argument, the court granted the Fords' motion and dismissed Bolser's complaint. This appeal followed.[4]

¶ 12 Because the interpretation of statutory requirements governing judicial review of administrative decisions is a question of law, we independently determine whether the superior court properly dismissed Bolser's complaint for lack of subject matter jurisdiction. *Guminski v. Ariz. State Veterinary Med. Examining Bd.*, 201 Ariz. 180, 182, ¶ 10, 33 P.3d 514, 516 (App.2001).

## DISCUSSION

¶ 13 The Administrative Review Act ("ARA"), A.R.S. §§ 12–901 to –914 (2003), grants the superior court jurisdiction to review a "final administrative decision" when an aggrieved party files a complaint seeking such review within thirty-five days of being served with the decision. A.R.S. §§ 12–904(A), –905(A). Barring compliance with the ARA, a party aggrieved by an ROC decision cannot obtain judicial review. *Guminski*, 201 Ariz. at 182, ¶ 8, 33 P.3d at 516. The sole issue before us is whether the ROC's January 27 disciplinary notice was a "final administrative decision" subject to judicial review. Predictably, Bolser argues that the notice is subject to such review, while the Fords take the opposite view, contending that Bolser could only seek judicial review of the notice by timely seeking review of the June 3 and June 4, 2004 orders. Resolution of this dispute turns on the meaning of "final administrative decision" in the context of ROC proceedings.

¶ 14 The ARA defines an "administrative decision," in relevant part, as "any decision, order or determination of an administrative agency that is rendered in a case, that affects the legal rights, duties or privileges of per-

---

4. The ROC did not appear in this appeal.

sons and that terminates the proceeding before the administrative agency." A.R.S. § 12–901(2). Utilizing the plain meaning of this definition, the January 27 disciplinary notice constitutes a final administrative decision. The notice reflects a decision or determination that Bolser did not adequately perform the corrective work described in the June 3 and June 4 orders, that revocation of Bolser's license was therefore in order, and that the Fords could now apply for reimbursement from the residential contractors' recovery fund. Indisputably, Bolser's privileges to engage in construction work were affected by revocation of its license. *See Comeau v. Ariz. State Bd. of Dental Exam'rs,* 196 Ariz. 102, 106, ¶ 18, 993 P.2d 1066, 1070 (App.1999) (recognizing property interest in professional license.) Finally, the notice terminated the proceedings before the ROC concerning the adequacy of Bolser's ongoing efforts to correct its work for the Fords. Despite the apparent applicability of § 12–901(2), the Fords assert that the January 27 disciplinary notice fails to meet the statutory definition of "administrative decision" for several reasons, which we address in turn.

¶ 15 The Fords first contend that the January 27 disciplinary notice cannot be a final administrative decision because the notice simply enforced the revocation imposed by the June 3 and June 4 orders, which Bolser failed to appeal, and "did not make any new decisions affecting any of [Bolser's] rights, duties, and privileges to its license." According to the Fords, the ROC's continuation of jurisdiction to consider whether Bolser adequately performed the corrective work set forth in the June 3 and June 4 orders did not stay the thirty-five-day deadline for Bolser to seek judicial review of those orders, and Bolser's complaint to the superior court more than six months later was therefore untimely.

¶ 16 We agree with the Fords that the superior court lacked subject matter jurisdiction to review the June 3 and June 4 orders because Bolser failed to timely seek review of those orders. Thus, Bolser could not obtain review of the ROC's determination that Bolser committed errors in constructing the Fords' garage or that revocation of Bolser's license was a proper remedy for these errors if left uncorrected. The Fords fail to recognize, however, that Bolser did not seek review of those orders. Rather, it only sought review of the ROC's later determination that license revocation remained in order because Bolser had failed to adequately perform the corrective work permitted under the June 3 and June 4 orders to avoid revocation. The ROC's election both to permit Bolser to avoid revocation by performing corrective work and to exercise continuing jurisdiction to decide whether Bolser adequately satisfied that condition resulted in a new decision reflected in the January 27 disciplinary notice. Consequently, although the notice emanated from the June 3 and June 4 orders, the notice constituted a separate determination that could not have been reviewed by seeking review of the June 3 and June 4 orders. *See* 3 Arizona Appellate Handbook § 34.3.4.2 (Hon. Sheldon H. Weisberg & Robert E. Miles eds., 3d ed.2001) (recognizing possibility for judicial review action of both original administrative decision and order by ROC suspending license and final decision determining whether conditions imposed by decision and order met). Indeed, judicial review of the June 3 and June 4 orders could not have encompassed whether the ROC correctly determined more than six months later that Bolser did not adequately perform the corrective work permitted by those orders.

¶ 17 The Fords next contend that the January 27 notice cannot qualify as a final administrative decision because it did not comply with requirements imposed by the Uniform Administrative Hearing Procedures, A.R.S. §§ 41–1092 to –1092.12 (2004), which governs proceedings conducted before the OAH. According to the Fords, because the ROC is required to use the OAH to conduct ROC hearings, A.R.S. §§ 32–1156(A) (Supp. 2004), 41–1092.01(E), and hearings must precede all decisions issued by ALJs employed by the OAH, § 41–1092.08(A), all ROC final administrative decisions necessarily stem from OAH hearings. Because an OAH hearing did not precede the January 27 disciplinary notice, the Fords contend that the notice cannot be a final administrative decision.

¶ 18 The syllogism posited by the Fords is flawed, however, as we are aware of no authority, and the Fords do not cite to any, requiring that OAH hearings precede all ROC decisions in order to constitute "decision[s], order[s] or determination[s]" as defined by A.R.S. § 12–901(2). Section 32–1154(A)(23) (Supp.2004), A.R.S., requires the ROC to conduct a hearing before revoking or suspending a license or imposing any other penalty for a specified number of acts or omissions committed by a contractor. Such hearings were held before issuance of the June 3 and June 4 orders.[5] Neither § 32–1154(A)(23) nor § 12–901(2), however, requires that a hearing be held before an ROC decision can be considered a final administrative decision. Moreover, we discern no reason for requiring a hearing before an ROC decision can be subject to judicial review. If, as in this case, the ROC refuses a request for a hearing, it could ensure that a decision that otherwise fits the definition set forth in § 12–901(2) would avoid review if we adopt the Fords' argument. We decline to interpret the law in such an unjust manner.[6] *See City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (court should interpret statute so as to give it a fair and sensible meaning); *Collins v. State,* 166 Ariz. 409, 415, 803 P.2d 130, 136 (App.1990) (court interprets statutes to accomplish legislative purpose and to avoid absurd result).

■ ¶ 19 The Fords next argue that the January 27 disciplinary notice is not a final administrative decision because the ROC did not place it in the form of an "order," which is described by the ROC's website as a

signed document stating the ROC's decision, informing the parties if the case is closed or if the contractor has violated relevant statutes, specifying corrective work, and identifying a future effective date. *See* Arizona Registrar of Contractors, Legal Section, Registrar's Order, http://www.azroc.gov/Legal/Order.html (last visited July 6, 2006). We disagree. The definition of an administrative decision is not confined to orders and can consist of decisions and determinations, as long as they affect contractors' rights, duties, and privileges and terminate proceedings before the ROC. A.R.S. § 12–901(2). Additionally, "[t]here are no formal requirements with respect to the form of the decisions issued by the [ROC]" other than those imposed when hearings are conducted by ALJs. 3 Arizona Appellate Handbook at § 34.3.4.1. For these reasons, whether the January 27 disciplinary notice constitutes a final administrative decision subject to judicial review does not turn on the form of order used by the ROC.[7]

¶ 20 In summary, we hold that the ROC's January 27 disciplinary notice revoking Bolser's license constituted a final administrative decision subject to judicial review. Such review, however, cannot encompass whether the ROC correctly entered the June 3 and June 4 orders.[8]

### CONCLUSION

¶ 21 For the foregoing reasons, the superior court erred by dismissing Bolser's complaint for lack of subject matter jurisdiction. We therefore reverse and remand for further proceedings consistent with this decision.

5. Whether ROC was required to conduct a hearing regarding the adequacy of Bolser's corrective work done after the June 3 and June 4 orders is not before us.

6. Similarly, the Fords assert that the January 27 disciplinary notice cannot be a final administrative decision because it did not contain findings of fact and conclusions of law as required of ALJ-authored decisions issued after hearings. A.R.S. § 41-1092.07(F)(7). In light of our conclusion that a hearing need not precede an ROC decision to make it a final administrative decision, we reject the Fords' contention.

7. The Fords also point out that the ROC asserted before the trial court that the January 27 disciplinary notice is not a final administrative deci-

sion subject to judicial review. Although we give some weight to the ROC's interpretation of the statutes that govern the agency, we are not bound by its legal conclusions. *Sigmen v. Ariz. Dep't of Real Estate,* 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991). Because the notice fits within the definition of an administrative decision subject to judicial review, we do not defer to the ROC's position.

8. Bolser raises other issues on appeal concerning the merits of his complaint. Because the superior court has not yet addressed these issues, however, we decline to do so.

Concurring: JEFFERSON L. LANKFORD, Presiding Judge and G. MURRAY SNOW, Judge.