IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

GROSVENOR HOLDINGS, L.C., an )
Arizona limited liability company; )
K. HOVANIAN GREAT WESTERN )
HOMES, L.L.C., an Arizona limited )
liability company; and TOUSA HOMES, )
INC., dba ENGLE HOMES, a Florida )
corporation, )
)
     Petitioners, )
)
    v. )
)
HON. GILBERTO V. FIGUEROA, Judge )
of the Superior Court of the State of )
Arizona, in and for the County of Pinal, )
)
     Respondent, )
)
    and )
)
PINAL COUNTY, a political subdivision )
of the State of Arizona, )
)
    Real Party in Interest. )
)

2 CA-SA 2009-0050
DEPARTMENT A

O P I N I O N

SPECIAL ACTION PROCEEDING

Pinal County Cause No. CV2008-03988

JURISDICTION ACCEPTED; RELIEF GRANTED

Fennemore Craig, P.C.
  By Douglas C. Northup and Scott J. Shelley

Phoenix
Attorneys for Petitioner

Kutak Rock, LLP
  By Michael W. Sillyman

Scottsdale
Attorneys for Real Party in Interest

E S P I N O S A, Presiding Judge.

¶1      In this special action, petitioners Grosvenor Holdings, L.C., K. Hovnanian Great Western Homes, L.L.C., and Tousa Homes, Inc., dba Engle Homes (petitioners) challenge the respondent judge's order denying their motion for partial summary judgment in the underlying action against Pinal County (the County) and remanding this matter to the Pinal County Board of Supervisors (the Board) for further proceedings consistent with the Administrative Review Act (the ARA), A.R.S. §§ 12-901 through 12-914.  For the reasons stated below, we accept jurisdiction to answer the following question:  Can a county subject its disputes under a contract to judicial review pursuant to the ARA by a term of the contract if the ARA would not otherwise apply?

## FACTS AND PROCEDURAL BACKGROUND

¶2      In 2000, petitioner Grosvenor purchased 453 acres of land in the County, planning to develop the property as a residential project called Entrada del Oro.  On June 25,

2

2003, Grosvenor and the County entered into a development agreement (the Agreement),[1] establishing permitted uses for the property, density and intensity of use requirements, parameters regarding construction and installation of infrastructure, and a development schedule, providing for phased construction. The Agreement states that, unless otherwise specified, "no surcharge, development or impact fees, or impositions of any kind whatsoever for water, sewer, utilities, transportation systems, public services or any other infrastructure cost or expense shall be chargeable to Developer in any phase of the construction of the development of the Property." Additionally, paragraph three of the Agreement grants to Grosvenor "the right to implement in phases [a] Development Plan under the terms and conditions of the Development Plan and this Agreement for an initial period of five (5) years, unless terminated sooner as set forth below." That paragraph further provides that Grosvenor "may request an extension of the term of this Agreement for one additional five (5) year period, which extension shall not be unreasonably withheld, conditioned or delayed by the County."

¶3 With respect to the resolution of disputes between the parties, paragraph twenty-one of the Agreement entitled "ADMINISTRATIVE DISPUTE RESOLUTION PROCESS" states: "Any dispute between Developer and County arising from the failure of either party to comply with material terms and conditions of the Development Plan or this Agreement after an impasse has been reached, shall be resolved by a review hearing by the

---

[1]Section 11-1101(A), A.R.S., authorizes counties to "enter into development agreements relating to property located outside the incorporated area of a city or town."

3

Board." After providing specific procedures and time limits for review by the Board, the paragraph further states:

> The Board's decision shall be subject to appeal and judicial review in the Superior Court of the State of Arizona in and for Pinal County pursuant to [the ARA] . . . . The Board and any judicial tribunal shall take into consideration, the purposes and goals of the Development Plan and this Agreement, the cost and expense incurred by Developer, the need and timeliness of the specific requested action and the fundamental purposes of A.R.S. § 11-1101, et seq. This dispute process is limited to disputes relating to either party's material failure to comply with the terms and conditions of this Agreement and the Development Plan, as they may be amended from time to time.

¶4 Petitioners contend that by May 2006, significant infrastructure had been constructed and petitioners K. Hovnanian and Engle had purchased lots within Entrada del Oro and had begun construction. In April 2008, petitioners requested a five-year extension of the Agreement pursuant to paragraph three. It is undisputed that, during a meeting on June 11, 2008, the Board denied petitioners' request on the ground that the County wished to assess impact fees on the project in order to increase revenue. Petitioners did not receive notice of the Board meeting, but on June 26, 2008, the County sent a letter by electronic mail to petitioners telling them the Agreement had expired the day before and the County would begin assessing impact fees in connection with all future building permits issued in connection with the Entrada del Oro project.

¶5 Petitioners sent a letter to the County protesting its decision and requesting a review hearing pursuant to paragraph twenty-one of the Agreement. During a meeting held

4

on September 17, which Grosvenor attended, the Board orally denied petitioners' request for an extension of the Agreement and authorized charging petitioners $8,964 per building permit in impact fees. On December 9, 2008, petitioners filed a complaint against the County in Pinal County Superior Court seeking a declaratory judgment that they were not required to pay the additional fee for the building permit. The complaint alleged two counts of breach of contract, for which petitioners sought injunctive relief and specific performance; asserted a claim based on promissory estoppel; and alleged the County had violated A.R.S. § 11-1102, for which they sought injunctive relief. Petitioners sought damages for all claims as well as attorney fees and costs. On December 15, counsel for the County sent a letter to petitioners' counsel, together with the Board's findings of fact regarding its denial of petitioners' request for an extension. In that letter, the County conceded that, "[t]hrough what appears to be an administrative and procedural oversight, your clients may not have received, in written form, the [Board's] final decision and findings of fact . . . ." The letter further stated that the County regarded the petitioners' complaint as their notice of review pursuant to the ARA. *See* § 12-904(A) (action to review final administrative decision commenced by filing complaint); § 12-904(B) (party seeking review required to file notice of action with office of administrative hearing or agency that conducted hearing within ten days after filing complaint).

¶6        Petitioners filed a motion for partial summary judgment, seeking the superior court's determination that the ARA does not apply to their lawsuit for a variety of reasons and

5

that the court was not limited to reviewing for an abuse of discretion the Board's denial of its request to renew the Agreement. Petitioners asserted the ARA does not apply because: (1) review under the ARA is not the exclusive means provided by the Agreement for reviewing the Board's decision, but even if it were, the County did not comply with the terms of the Agreement in issuing its decision; and (2) if paragraph twenty-one does provide that review pursuant to the ARA is the exclusive means of obtaining judicial review, the provision is unenforceable because (a) the ARA does not apply to decisions by the Board and therefore the court lacks subject matter jurisdiction to address the complaint pursuant to the ARA, and (b) enforcement of the provision would violate petitioners' due process rights. The respondent judge denied petitioners' motion for partial summary judgment. He found paragraph twenty-one of the Agreement unambiguously requires disputes to be resolved by the Board after the Board conducts a review hearing. The respondent also found paragraph twenty-one "sets forth that, with certain qualifiers, 'the Board's decision shall be subject to appeal and judicial review in the Superior Court . . . .' pursuant to [the ARA]."

¶7        Relying on *Airport Properties v. Maricopa County*, 195 Ariz. 89, 985 P.2d 574 (App. 1999), the respondent judge found the language in the Agreement "must be read, in context, to mean that no appeal <u>must</u> be taken, but if an appeal <u>is taken</u>, it will be, pursuant to ARS § 12-901, processed under the [ARA] in the Superior Court." And, agreeing with the County, the respondent concluded "the County may <u>voluntarily</u> submit to Administrative Review of its decisions, as authorized by ARS § 11-251(21) and ARS § 11-1101(1); *see*

6

*Boyce v. City of Scottsdale*, 157 Ariz. 265, 756 P.2d 934 (App. 1988)." The respondent found the parties had agreed any appeal would be pursuant to the ARA but found, too, that there was no final administrative order to review pursuant to the ARA, because it did not appear a hearing had been conducted consistent with the Agreement or that a final ruling had been rendered, as contemplated by the ARA. *See* § 12-901(2). The respondent stated he could not determine whether the parties had, in fact, complied with the provisions of paragraph twenty-one because certain factual matters remained unclear. He remanded the matter to the Board so that procedures consistent with paragraph twenty-one could be conducted and a final order entered. Presumably, the respondent judge believed he had the authority to remand the matter under § 12-910(E), which gives the superior court the authority to "affirm, reverse, modify or vacate and remand the agency action," and § 12-911(A)(6), which empowers the superior court to "[s]pecify questions or matters requiring further hearing or proceedings and give other proper instructions." This petition for special action relief followed.

## SPECIAL ACTION JURISDICTION

¶8        This court generally will not accept jurisdiction to review an order denying a motion for summary judgment. *Callan v. Bernini*, 213 Ariz. 257, ¶ 2, 141 P.3d 737, 738 (App. 2006). "There are, however, exceptions to that rule. One such exception is when 'the question presented is a pure issue of law and the error by the trial court is patent.'" *Id., quoting King v. Superior Court*, 138 Ariz. 147, 150 n.3, 673 P.2d 787, 790 n.3 (1983). The

7

interpretation of paragraph twenty-one and the interpretation and application of the ARA are purely questions of law. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, ¶ 37, 167 P.3d 111, 121 (App. 2007) (interpretation of contract question of law); *In re Reymundo F.*, 217 Ariz. 588, ¶ 5, 177 P.3d 330, 332 (App. 2008) ("interpretation of statutes and rules are questions of law"). This court may accept special action jurisdiction to determine a question of law before the case proceeds to trial in order to avoid the "unnecessary expenditure of time and money," *ChartOne Inc. v. Bernini*, 207 Ariz. 162, ¶¶ 8, 10, 83 P.3d 1103, 1106-07 (App. 2004), and "promote[] judicial economy and efficient use of the parties' and the court's resources." *Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 215 Ariz. 589, ¶ 16, 161 P.3d 1253, 1258 (App. 2008); *see also Callan*, 213 Ariz. 257, ¶ 3, 141 P.3d 737, 738 (App. 2006) (accepting special action jurisdiction and finding no reason to allow "case to proceed to trial only to have us hold on appeal that the respondent judge had no jurisdiction to conduct that trial"). Furthermore, we will accept jurisdiction of a special action when the trial court is "threatening to proceed without subject matter jurisdiction in excess of its authority." *Kadera v. Superior Court*, 187 Ariz. 557, 559, 931 P.2d 1067, 1069 (App. 1996); *see also* Ariz. R. P. Spec. Actions 3(b).

## DISCUSSION

**¶9**    The first issue we must decide is whether the respondent judge erred when he implicitly found that paragraph twenty-one provides for review pursuant to the ARA as the exclusive means by which either party may obtain judicial review of the Board's resolution

of the dispute between petitioners and the County, thereby barring the parties from filing a de novo complaint for breach of contract and related claims.[2]  As we noted previously, the interpretation of a contract is a question of law, which this court reviews de novo.  *Rand*, 216 Ariz. 424, ¶ 37, 167 P.3d at 121.  "A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written."  *Grubb & Ellis Mgmt. Serv., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, ¶ 12, 138 P.3d 1210, 1213 (App. 2006).  The purpose of contract interpretation is to determine the parties' intent and enforce that intent.  *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993).  In order to determine what the parties intended, we first consider the plain meaning of the words in the context of the contract as a whole.  *United Cal. Bank Inc. v. Prudential Ins. Co.*, 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983).  "'Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'"  *Mining Inv. Group, L.L.C. v. Roberts*, 217 Ariz. 635, ¶ 16, 177 P.3d 1207, 1211 (App. 2008), *quoting Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966).  Further, whether a contract is reasonably susceptible to more than one interpretation is a question of law, which we review de novo.  *In re Estate of Lamparella*, 210 Ariz. 246, ¶ 21, 109 P.3d 959, 963 (App.  2005); *see also Liberty Ins. Underwriters, Inc. v.*

---

[2]Although the respondent did not expressly find petitioners could only appeal the Board's decision pursuant to the ARA, as explained more thoroughly below, the respondent did so implicitly, based on the order in its entirety and the manner in which it processed the complaint.

*Weitz Co., L.L.C.*, 215 Ariz. 80, ¶ 8, 158 P.3d 209, 212 (App. 2007) ("If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written.").

¶10         Paragraph twenty-one is the only provision in the Agreement that pertains to dispute resolution. It prescribes a specific process for resolving all disputes in the event the parties reach an "impasse," and requires the Board to issue findings of fact after conducting a review hearing. Paragraph twenty-one also states, clearly and unambiguously: "The Board's decision shall be subject to appeal and judicial review in the Superior Court of the State of Arizona in and for Pinal County pursuant to [the ARA] . . . ." Thus, it clearly purports to bar any other means of dispute resolution relating to an alleged breach of the contract, including the filing of an original complaint in the superior court, as petitioners did here.[3] Therefore, we now turn to the question whether the ARA applies on its face to decisions by the Board, limiting the superior court's jurisdiction only to that permitted by the ARA. *See* § 12-910(E) (superior court reviews decision by administrative agency to determine whether it was illegal, arbitrary, capricious, or involved abuse of discretion); *see also Koepnick v. Ariz. State Land Dep't*, 221 Ariz. 370, ¶ 7, 212 P.3d 62, 66 (App. 2009).

---

[3]Even assuming as true petitioners' contention that the provision was not intended to provide the exclusive means of obtaining judicial review, the result here would be the same. As discussed below, the County and petitioner Grosvenor simply could not agree even as one option that the County's final decision could be appealed pursuant to the ARA. Nothing in the respondent's minute entry suggests he believed petitioners could file a de novo complaint in superior court as well as appeal the Board's decision. And from the fact that the respondent remanded the matter to the Board, we infer the respondent, like the County, construed the petitioners' complaint as a request for review pursuant to the ARA.

**¶11** "When construing a statute, we must 'determine and give effect to legislative intent.'" *Ariz. Dep't of Admin. v. Cox*, 222 Ariz. 270, ¶ 8, 213 P.3d 707, 710 (App. 2009), *quoting City of Phoenix v. Phoenix Employment Relations Bd.*, 207 Ariz. 337, ¶ 11, 86 P.3d 917, 920 (App. 2004). "We look first to the plain language of the statute because that is the best indicator of legislative intent. If the meaning of the language is clear, we do not employ any further methods of construction." *Id*. (citations omitted). Like the interpretation of statutes generally, the interpretation of the ARA is a question of law, which we review de novo. *See Bolser Enters. Inc. v. Ariz. Registrar of Contractors*, 213 Ariz. 110, ¶ 12, 139 P.3d 1286, 1288 (App. 2006) ("the interpretation of statutory requirements governing judicial review of administrative decisions [under the ARA] is a question of law").

**¶12** The ARA provides for judicial review in the superior court of "a final decision of an administrative agency." § 12-902(A)(1); *see also Bolser Enters., Inc.*, 213 Ariz. 110, ¶ 13, 139 P.3d at 1288 (ARA "grants the superior court jurisdiction to review a 'final administrative decision'"). The ARA excludes from the definition of "administrative agency" any "political subdivision or municipal corporation or any agency of a political subdivision or municipal corporation." § 12-901(1). Petitioners contend the County is a municipal corporation for purposes of the ARA and by its terms, therefore, the ARA does not apply to its decisions. And, petitioners argue, the ARA cannot be made applicable by agreement, because that is tantamount to conferring jurisdiction upon the superior court that it does not have. The County concedes the Board is "excluded from the *mandatory* application of" the

11

ARA because it is a political subdivision. But, the County insists, "this exclusion does not prohibit the Board from *voluntarily* subjecting its decisions to judicial review." Relying on A.R.S. §§ 11-251.21, 11-1202.I, the County asserts that "the Board is statutorily authorized to establish the terms under which it will transact business, including, but not limited to, providing for the judicial review of specific Board decisions."

¶13        "Subject matter jurisdiction is 'the power of a court to hear and determine a controversy.'" *State v. Bryant*, 219 Ariz. 514, ¶ 14, 200 P.3d 1011, 1014 (App. 2008), *quoting Marks v. LaBerge*, 146 Ariz. 12, 15, 703 P.2d 559, 562 (App. 1985); *see also State ex rel. Milstead v. Melvin*, 140 Ariz. 402, 404, 682 P.2d 407, 410 (1984) ("Subject matter jurisdiction means the power to hear and determine a general class of cases to which a particular proceeding belongs."). "The jurisdiction of the superior court is conferred upon it by the state constitution and statutes." *Schoenberger v. Bd. of Adjustment of the City of Phoenix*, 124 Ariz. 528, 530, 606 P.2d 18, 20 (1980); *see also* Ariz. Const. art. VI, § 14 (specifying scope of superior court's jurisdiction, which includes in subsection (11), "such other jurisdiction as may be provided by law"); A.R.S. §§ 12-121 through 12-136 (establishing county superior courts and proscribing such courts' authority and jurisdiction). Similarly, "the right to appeal exists only by force of statute . . . ." *Cordova v. City of Tucson*, 15 Ariz. App. 469, 470, 489 P.2d 727, 728 (1971). The superior court is Arizona's trial court of general jurisdiction. *See* Ariz. Const. art. VI, § 14; *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 100, 907 P.2d 67, 69 (1995); *State v. Marks*, 186 Ariz. 139, 142, 920 P.2d 19, 22

12

(App. 1996). In § 12-905(A), the legislature expressly vested in the superior court "jurisdiction to review final administrative decisions . . . ." The superior court's jurisdiction pursuant to the ARA "exists only by force of statute and is limited by the terms of the statute." *Guminski v. Ariz. St. Veterinary Med. Examining Bd.*, 201 Ariz. 180, ¶ 8, 33 P.3d 514, 516 (App. 2001). As Division One of this court stated in *Rose v. Arizona Department of Corrections*, 167 Ariz. 116, 118, 804 P.2d 845, 847 (App. 1991), "[j]udicial review of an administrative decision is not a matter of right except in those situations in which the law authorizes review."

¶14 Petitioners contend "there can be no review under the [ARA] unless [it] or some other statute specifically authorizes review. And, where no such statutory authorization exists, a court lacks subject matter jurisdiction to proceed under the [ARA]." There is no such authority here, they assert, therefore, the respondent judge erred in processing the complaint pursuant to the ARA, notwithstanding the portion of paragraph twenty-one purporting to authorize the superior court to do so. Consequently, petitioners contend, that portion of the Agreement is unenforceable. We agree.

¶15 As we previously stated, the County concedes it is not an administrative agency for purposes of the ARA. Counties are political subdivisions of the state. *See Dowling v. Stapley*, 218 Ariz. 80, ¶ 11, 179 P.3d 960, 964-65 (App. 2008); *see also Sackey v. Cochise County Merit Comm'n*, 122 Ariz. 586, 588, 596 P.2d 724, 726 (App. 1979) ("The merit commission is an agency of the county and therefore not an 'agency' as defined in the

13

[ARA].") (citation omitted). The County and petitioners are both correct, therefore, that neither the County nor its governing body, the Board, is covered by the mandatory provisions of the statute. The County contends that, nevertheless, paragraph twenty-one is valid and enforceable because the County can, by agreement, confer jurisdiction upon the superior court to review a board's decision pursuant to the ARA, and they did so here. The County insists there is statutory and case law support for its argument.

¶16 Nothing in the ARA states or suggests that parties to a contract can agree to its application and confer jurisdiction on the superior court when the ARA is otherwise inapplicable. On the contrary, the statute's applicability provision, § 12-902, and its definitions section, § 12-901, clearly and unambiguously limit the scope of the ARA's application. The legislature has made clear that the ARA applies to final decisions of an administrative agency only, § 12-902(A), and that the terms "administrative agency" or "agency" do "not include an agency in the judicial or legislative departments of the state government, any political subdivision or municipal corporation or any agency of a political subdivision or municipal corporation." § 12-901(1). Had the legislature intended to include within the ARA's purview decisions by boards otherwise excluded by the definition of administrative agency, it could have done so. And, had it intended to permit excluded entities to render the ARA applicable by agreement, it could have done so as well.

¶17 Indeed, when the legislature has wanted to make a decision by a county board of supervisors subject to judicial review pursuant to the ARA it has enacted express

14

legislation. For example, A.R.S. § 11-1006 authorizes a board of supervisors to establish a civil penalty for violations of an animal statute or ordinance and to appoint hearing officers to hear such cases. The hearing officer is required to conduct a hearing to determine whether there has been a violation, § 11-1006(B), and the hearing officer's final decision is "subject to judicial review under" the ARA, § 11-1006(D). Similarly, A.R.S. § 11-808 authorizes a county to establish penalties for the violation of a zoning regulation or ordinance, § 11-808(D), and to appoint a hearing officer to conduct hearings regarding such violations, § 11-808(E), (F). The hearing officer's decision may be reviewed by the board of supervisors, and a final decision by the board is subject to review pursuant to the ARA. A.R.S. § 11-808(G); *see also* A.R.S. § 11-356(D) (providing for superior court's review pursuant to ARA of decision by county employee merit system to dismiss, suspend, or reduce in rank an officer or employee in the classified civil service).

¶18 The respondent judge concluded that his review of the Board's decision under the ARA was authorized by § 11-251(21) and § 11-1101(10). Section 11-251, on which the County also relies, prescribes generally the powers and duties of a county's board of supervisors. *See also State ex rel. Pickrell v. Downey*, 102 Ariz. 360, 363, 430 P.2d 122, 125. (1967) (county "board of supervisors possesses only such power as is expressly conferred by statute, or is necessarily implied therefrom"). Section 11-251(21) provides that "under such limitations and restrictions as are prescribed by law, [a county] may . . . [m]ake and enforce necessary rules and regulations for the government of its body, the preservation of order and

15

the transaction of business." But a development agreement is not a rule or regulation. And nothing in this subsection expressly authorizes the County to enter into a development agreement with a party who also does not fall within the purview of the ARA and provide for judicial review of the Board's resolution of a dispute between the County and the other party pursuant to the ARA.

¶19        Nor does § 11-1101(B)(10) authorize the County to agree that judicial review of the Board's decision under these circumstances shall be pursuant to the ARA. Section 11-1101 pertains generally to a county's authority to enter into a development agreement. Subsection (B) of the statute lists what the agreement "may specify or otherwise relate to"; subsection (B)(10) allows the county to include in such agreements "[a]ny other matters relating to the development of the property." But it does not provide the County may control application of the ARA.

¶20        The County's reliance on A.R.S. § 11-1202(I) is similarly misplaced. Section 11-1202(A) authorizes the county to "provide by ordinance or resolution the requirements for a development to be a phased development." And subsection (I) of the statute provides, "[a] protected development right is subject to the terms and conditions imposed by the county on the protected development right plan approval." Again, none of these provisions even mentions the ARA, and nothing in them permits a county to enter into a contract that purports to give the superior court jurisdiction under the ARA to review disputes resolved by a board in accordance with the terms of that contract.

16

**¶21** Thus, there is no statutory authority supporting the portion of paragraph twenty-one that provides for judicial review of the Board's decision pursuant to the ARA. Absent such authority, the County and Grosvenor could not agree to confer such jurisdiction on the superior court. Parties cannot, by agreement or consent, confer subject matter jurisdiction on a court where it would not otherwise exist. *See Kadera*, 187 Ariz. at 562, 931 P.2d at 1072; *Solomon v. Findley*, 165 Ariz. 45, 46, 796 P.2d 477, 478 (App. 1990); *cf. In re 1988 Chevrolet 1/2 PU*, 186 Ariz. 419, 421, 924 P.2d 109, 111 (App. 1996) (appellate courts have only such jurisdiction as legislature grants, and parties cannot confer jurisdiction by consent), *overruled on other grounds by In re Prop. at 6757 S. Burcham Ave.*, 204 Ariz. 401, ¶¶ 3-6, 64 P.3d 844-45 (App. 2003). Nor can parties limit the court's jurisdiction, which is the effect of the respondent judge's consideration of petitioners' complaint as nothing more than a request for review under the ARA rather than a de novo complaint. *See Simpson v. Superior Court*, 87 Ariz. 350, 357, 361 P.2d 179, 184 (1960) (parties neither can confer nor restrict superior court's jurisdiction); *cf. Arizona Downs v. Turf Paradise, Inc*, 140 Ariz. 438, 443, 682 P.2d 443, 448 (App. 1984) (parties may not, by contract, deprive regulatory body of its authority to regulate matters within its jurisdiction).

**¶22** We find equally misplaced the respondent judge's reliance on *Boyce v. City of Scottsdale*, 157 Ariz. 265, 756 P.2d 934 (App. 1988). That case stands, in part, for the proposition that the ARA does not apply to a decision by a city board of adjustment because it is a municipal corporation and expressly exempt from the purview of the ARA. 157 Ariz.

17

at 269, 756 P.2d at 938. Moreover, the special action review by the superior court in that case was provided in and governed by A.R.S. § 9-462.06(J). *Id*. And the issue presented to Division One of this court was whether the City of Scottsdale Board of Adjustment had the authority to enact a rule that would permit the board to reconsider or rehear its previous decision, which affected the timeliness of the appellant's special complaint in the superior court. *Id*. at 266, 756 P.2d at 935. We fail to see how *Boyce* supports the respondent's order.

¶23 Nor has the County persuaded us that *R.L. Augustine Construction Co. Inc. v. Peoria Unified School Dist. No. 11*, 188 Ariz. 368, 936 P.2d 554 (1997), and *Ayala v. Hill*, 136 Ariz. 88, 664 P.2d 238 (App. 1983), support its position. Neither case stands for the proposition that, although the County is statutorily exempt from the ARA, it nevertheless could consent to the superior court's review of a decision by the Board pursuant to the ARA.

¶24 In *R.L. Augustine*, the trial court had dismissed the complaint filed by R.L. Augustine Construction Company in superior court against the Governing Board of the Peoria Unified School District, seeking judicial review pursuant to the ARA of a decision by the Governing Board and the subsequent review by a hearing officer appointed by the Governing Board. The dispute related to delays in construction of an administration center. 188 Ariz. at 369, 936 P.2d at 555. The complaint also sought "a declaration that the Board of Education's procurement rules were unconstitutional because one of the parties to the contract, the Governing Board, as owner, also acted as the final agency decision maker." *Id*. The trial court dismissed the complaint on the ground that R.L. Augustine had failed to seek

18

a rehearing pursuant to the Arizona Administrative Code (AAC) R7-2-1182, the Board of Education's procurement rules, which the Board had promulgated pursuant to A.R.S. § 15-213(A). *Id*. at 369-70, 936 P.2d at 555-56. The court of appeals reversed, holding that the procurement rules were unconstitutional and that the ARA did not apply to school districts. *Id*.

¶25        Vacating the court of appeals decision, the supreme court also reversed the trial court's ruling, finding, as had the court of appeals, that the ARA did not apply. *Id*. at 371, 936 P.2d at 557. The supreme court remanded the case to the trial court for a de novo review of the claims R.L. Augustine had raised in its complaint. *Id*. As the supreme court noted, the Board of Education's procurement rules were required to be consistent with Arizona's Procurement Code, §§ 41-2501 through 41-2637. *Id*. at 370, 936 P.2d at 556. But they differed in significant respects. First, the Board of Education's rules provided the same two-tiered system of review as the Procurement Code but with one important distinction: the initial decision and final decision were by the same entities, the Governing Board of the School District, also a party to the contract. *Id*. Second, the Board of Education's procurement rules did not provide for judicial review of the Governing Board's decision pursuant to the ARA, whereas the Procurement Code does. *Id*. at 371, 936 P.2d at 557; *see* A.R.S. § 41-2614.

¶26        The County relies on that portion of *R.L. Augustine* in which the supreme court stated: "Had the Board [of Education] adopted a rule for judicial review, the Administrative

19

Review Act would have applied even though the school district is not an administrative agency within the meaning of [the ARA] . . . ." 188 Ariz. at 371, 936 P.2d at 557. The County seems to suggest that, because it can promulgate rules or regulations rendering the ARA applicable, it can also consent to application of the ARA in a contract. But as petitioners point out, the supreme court explained further in the same portion of its decision that the ARA could have applied "because A.R.S. § 15-213(A) confers power on the Board [of Education] to adopt rules consistent with the Procurement Code, [A.R.S. § 41-2614] which itself provides for judicial review pursuant to the Administrative Review Act." *Id*. The supreme court also noted that, had the Board of Education promulgated a rule making itself, rather than the Governing Board of the School District, "the final administrative decision maker, then the Board of Education, as an administrative agency, would come within the express scope of A.R.S. § 12-902(A)." *Id*. But here, the County, through its Board, is the final arbiter of disputes; the County has not promulgated a rule rendering the ARA applicable, and more importantly, it has not enacted a rule that is supported by and implicates a statute that expressly gives the superior court subject matter jurisdiction pursuant to the ARA.

¶27        Nor are we persuaded that *Ayala* furthers the County's cause. In *Ayala* Division One of this court noted that a rule promulgated by the Maricopa County Law Enforcement Officers Merit System Council provided that the Council's decision would be "subject only to administrative review" under the ARA. 136 Ariz. at 92, 664 P.2d at 242. But the court did not address whether the Council could enact such a rule in the absence of a

statute authorizing application of the ARA. "[T]he sole issue on appeal [from the superior court's denial of Ayala's request for special action relief in superior court was] whether the Maricopa County Law Enforcement Officers Merit System Commission . . . [could] rehear and redecide a disciplinary action previously ruled upon by the commission, absent statutory authority or an express rule permitting it do so." *Id*. at 89, 664 P.2d at 239. We note, moreover, as petitioners did in their reply, that the rule in *Ayala* that subjected a decision of the Commission to review pursuant to the ARA has since been amended, eliminating any reference to the ARA and providing instead that review shall be by a writ of certiorari in the superior court pursuant to A.R.S. § 38-1004(A).

¶28        We conclude that the portion of paragraph twenty-one providing for judicial review by the superior court pursuant to the ARA of the Board's resolution of disputes between the County and petitioner Grosvenor is void.[4] The respondent judge regarded his jurisdiction of the complaint as emanating from and limited to that provided by the ARA. *See Madsen v. Fendler*, 128 Ariz. 462, 466, 626 P.2d 1094, 1098 (1981) ("Judicial review of administrative actions is a limited review and relates only to issues, questions, or parties open to review under the [ARA].") (citations omitted). The respondent, like the County, presumably treated the complaint as petitioners' request and notice for review pursuant to the

---

[4]We acknowledge the County's argument that the Agreement was reached after negotiations in an arms-length transaction between "sophisticated parties." The provision is void nevertheless. We note the Agreement contains a severability provision and the void portion of paragraph twenty-one arguably is severable from the remaining provisions of the Agreement.

21

ARA. *See* § 12-904. Accordingly, consistent with §§ 12-910(E) and 12-911(A)(6),[5] the respondent judge remanded the matter to the Board for further proceedings. In doing so, the respondent judge acted without and in excess of his jurisdiction and is threatening to continue to do so. *See* Ariz. R. P. Spec. Actions 3(b). We therefore grant petitioners' request for special action relief and vacate the respondent judge's order denying petitioners' motion for partial summary judgment and direct the respondent to enter such orders as he deems appropriate that are consistent with this decision and to conduct further proceedings, which include the processing of petitioners' complaint as a de novo complaint in superior court. *See R.L. Augustine Const., Inc.*, 188 Ariz. at 371, 936 P.2d at 557. We expressly do not address the remaining claims petitioners raise in their special action petition.

_____
PHILIP G. ESPINOSA, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

_____
PETER J. ECKERSTROM, Judge

_____
[5]Section 12-910(E) gives the superior court the authority to "affirm, reverse, modify or vacate and remand the agency action." And § 12-911(A)(6) gives the court the power to "[s]pecify questions or matters requiring further hearing or proceedings and give other proper instructions."