NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BLACK CREEK INTEGRATED SYSTEMS CORP., an Alabama
corporation, *Plaintiff/Counterdefendant/Appellee*,

*v.*

ALANCO/TSI PRISM, INC., an Arizona corporation nka TSI
DISSOLUTION CORP., an Arizona corporation; ALANCO
TECHNOLOGIES, INC., an Arizona corporation,
*Defendants/Counterclaimants/Appellants*.

No. 1 CA-CV 14-0449
FILED 5-26-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-014175
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Ryan Rapp & Underwood PLC, Phoenix
By David W. Kash
*Counsel for Plaintiff/Appellee*

Mueller & Drury PC, Scottsdale
By Douglas V. Drury
*Counsel for Defendants/Appellants*

_____

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

_____

**G O U L D**, Judge:

¶1            TSI/Alanco appeals from the trial court's decision finding TSI/Alanco in breach of warranty and awarding damages and attorneys' fees.   For the following reasons we affirm in part, vacate in part, and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2            Alanco owned TSI Prism, a business that manufactured and marketed RFID systems designed to monitor persons confined in prisons and jails.  On August 11, 2010, Black Creek executed a purchase contract for substantially all the assets of Alanco and TSI Prism.  The sale was governed by an Asset Purchase Agreement (APA).

¶3            According to the APA, the parties agreed on a purchase price of $2,000,000.00 subject to adjustment if the inventory at the closing date differed from the inventory taken on May 31, 2010.  The APA provided that TSI/Alanco would prepare an inventory schedule on the closing date using the same principles, policies and practices that had been used to prepare the May 31 inventory schedule.  Any changes in the inventory would be reflected dollar for dollar in the purchase price adjustment.  Black Creek would have an opportunity to object to the inventory amount in the closing inventory schedule.  If Black Creek and TSI/Alanco could not resolve "the issues outstanding with respect to the [closing inventory schedule]" the parties agreed "the issues remaining in dispute" would be submitted to independent public accountants "for resolution applying the principles, policies and practices" that had been used to prepare the May 31 inventory schedule.

¶4            Following the closing on August 11, 2010, Black Creek objected to the inventory schedule on the basis that some of the inventory included in the closing inventory schedule breached the APA warranty. Specifically, Black Creek asserted that some of the inventory was not, as required by the warranty, "of a quality and quantity usable and saleable in

the ordinary course of business" and that it was "stored and/or located at premises owned or leased by" TSI/Alanco. Black Creek filed a lawsuit alleging that TSI/Alanco's refusal to credit Black Creek, as required by § 3.2 of the APA, for the unusable and inaccessible inventory, was a breach of the APA. Black Creek asked the court to award damages resulting from TSI/Alanco's breach.

¶5          TSI/Alanco filed an answer and counterclaim arguing that Black Creek's claims were required to be submitted to the independent accountants pursuant to § 3.2 of the APA. TSI/Alanco counterclaimed that Black Creek owed TSI for the increase in the inventory between the closing and the May 31 inventory. Alanco also argued that it was not a proper party to Black Creek's lawsuit because it only guaranteed TSI against third party claims.

¶6          Initially, the amount of damages sought by Black Creek exceeded the limits for compulsory arbitration pursuant to Arizona Rule of Civil Procedure 72. However, the parties resolved all claims related to disputes over operating expenses leaving only the claims relating to the inventory still pending. Accordingly, the parties stipulated that the amount of the damages related to the inventory dispute did not exceed the limits for compulsory arbitration.

¶7          Before the case was sent to compulsory arbitration, however, TSI/Alanco filed a motion for partial summary judgment. The motion argued that the dispute was governed by § 3.2 of the APA and should be decided by independent accountants. TSI/Alanco characterized Black Creek's claim as an objection to the value TSI assigned to certain inventory contained in the closing inventory schedule. In response, Black Creek argued that the suit was "not brought to object to [TSI/Alanco's] manner of account of inventory," but to seek damages that resulted from TSI/Alanco's "breach of warranty and representation with respect to the scheduled inventory." Black Creek argued the accountants were not qualified to resolve its breach of warranty claim.

¶8          Reasoning that the matter was not confined to a dispute over the value of the inventory, the court denied TSI/Alanco's motion for partial summary judgment and directed that Black Creek could pursue its breach of warranty claim. The matter went to compulsory arbitration, the arbitrator rendered a decision in favor of Black Creek, and TSI/Alanco appealed seeking a trial de novo. *See* Ariz. R. Civ. Proc. 77(a).

¶9          The court held a bench trial.  At trial, Black Creek argued the AeroScout inventory was not of the quality warranted because it had been returned to TSI/Alanco due to failure to function properly in the field. According to Black Creek, the fact that the inventory was used and repaired rendered it unusable to Black Creek in the ordinary course of its business. Black Creek insisted TSI/Alanco breached the APA warranty because it did not designate the AeroScout inventory differently than other inventory. TSI/Alanco responded that it included a reserve in the inventory schedule to represent the reduction in value of the AeroScout inventory.

¶10          Ultimately, the court ruled for Black Creek on its breach of warranty claim concerning the AeroScout inventory.  The court awarded $7,277.42 in damages, and added this amount to the $9,569.88 the parties stipulated was owed to Black Creek for business expenses, resulting in a total award of $16,847.30.  Black Creek requested an award of attorneys' fees pursuant to the APA which the court granted, awarding Black Creek $100,267.50 in attorneys' fees and $2,916.33 in costs.  TSI/Alanco appealed.

## DISCUSSION

¶11          Black Creek sued TSI/Alanco for damages based on an alleged breach of the warranty in the APA.  Black Creek focused its claim on the fact that inventory included in the closing inventory schedule did not comport with TSI/Alanco's warranty that all inventory was usable and saleable in the ordinary course of business.  TSI/Alanco argued that it had not breached the warranty and, at any rate, that Black Creek's claim was in fact a dispute as to the valuation of the inventory that was subject to resolution by an independent accounting firm.  The parties take these same positions on appeal.

¶12          Black Creek initially objected to three groups of inventory contained in the closing inventory schedule: (1) the AeroScout inventory that had been returned from the vendor; (2) the MicroTech inventory that was held at a vendor's site and inaccessible to Black Creek; and (3) the Alderfer strap inventory.  The trial court denied Black Creek's claims regarding the MicroTech and Alderfer strap inventory.  That decision has not been appealed.  Thus, the only issues before us relate to the AeroScout inventory.

¶13          The construction or interpretation of a contract is a question of law which we review de novo.  *Smith v. Melson, Inc.*, 135 Ariz. 119, 121 (1983); *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).  Our analysis begins with the basic principle that the language of the

contract governs resolution of the parties' contractual disputes. *See Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (1977) (stating that "a court must give effect to the contract as it is written"; "[t]he intent of the parties, as ascertained by the language used, must control the interpretation"); *Figueroa*, 222 Ariz. at 593, ¶ 9. ("[W]hen parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written."). "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Id.*

**¶14**    Our courts have long recognized the extensive power of parties "to determine the terms of their contractual engagements." *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 268, ¶¶ 12, 15 (2003) (stating that parties can even surrender statutory remedies); *Morgan Bank (Delaware) v. Wilson*, 164 Ariz. 535, 537 (App. 1990) (stating that "parties may include contractual provisions for resolving controversies in a particular jurisdiction"). Parties can agree, by contract, to submit a dispute to arbitration or alternative dispute resolution; such an agreement removes the dispute from the jurisdiction of the court. *See Estate of Decamacho ex rel. Guthrie v. La Solana Care and Rehab, Inc.*, 234 Ariz. 18, 22, ¶ 13 (App. 2014); *see also Duenas v. Life Care Centers of America, Inc.*, 236 Ariz. 130, 139, ¶ 29 (App. 2014) ("An agreement to arbitrate relates to the jurisdiction of the courts.")

**¶15**    Here, the parties contracted that the purchase price would be adjusted to reflect any increase, or decrease, in the inventory of TSI/Alanco between the valuation date, May 31, 2010, and the closing date. To support the price adjustment, TSI/Alanco was required to provide a closing inventory schedule so that Black Creek would have an opportunity to review the inventory and object to the "inventory amount as reflected on the [closing] [i]nventory [s]chedule." The parties contracted that disputes regarding the closing inventory schedule would be submitted to independent public accountants for a binding resolution. This contract term is essentially an arbitration or alternative dispute resolution clause; the parties agreed that closing inventory disputes would be resolved by the designated independent accounting firm. *See* Arizona Revised Statute section 12-1501 (stating that an arbitration provision in a written contract is valid, enforceable and irrevocable); *Estate of Decamacho*, 234 Ariz. at 21, ¶ 10 (stating that an arbitration clause in a valid contract is enforceable).

**¶16**    Black Creek argues that the subject ADR provision does not apply to its breach of warranty claim. However, Black Creek's claim is no different than an objection to the adjusted purchase price based on the contention that inventory included in the closing inventory schedule was not as warranted by the contract. The contract does state that TSI/Alanco

warrants that its inventory "consists of a quality and quantity usable and saleable in the ordinary course of business," but the contract also directs that disputes over the valuation of the closing inventory, whether they are due to a breach of warranty or some other alleged defect, shall be submitted to, and resolved by, the independent public accountants.

¶17      Despite Black Creek's arguments to the contrary, the pleadings and evidence presented to the court reveal that the underlying thrust of its claim is an objection to the closing inventory valuation. In its initial objection to the inventory, Black Creek stated that it was formally objecting "to the 'Increase in inventory value between May 31, 2010 and closing.'" In its response to TSI/Alanco's motion for summary judgment, Black Creek explained the measure of damages it sought for breach of warranty "is the difference at the time and place of closing between the value of the repaired or refurbished inventory and the value they would have had if they had been [as] warranted, 'usable and saleable in the ordinary course of business.'" Furthermore, the bulk of the evidence at trial was focused on the issue of the proper valuation of the closing inventory in light of the defective quality of certain inventory items.

¶18      Accordingly, under the terms of this contract, the court lacked jurisdiction to determine the amount of Black Creek's damages. Whether or not the objected-to inventory was unsaleable and in breach of the warranty contained in the APA was properly before the court; however, upon determining that some of the inventory in the closing inventory schedule was in breach of the APA's warranty, the court was required, pursuant to § 3.2 of the APA, to direct the parties to submit their inventory valuation dispute to the independent public accountants. *U.S. Insulation, Inc. v. Hilro Const. Co., Inc.* 146 Ariz. 250, 258 (App. 1985) ("[P]arties are bound to arbitrate only the issues which by the clear language of the agreement are subject to arbitration.").

I.      Alanco's Guaranty

¶19      Alanco argues on appeal that the court erred in concluding that it was contractually bound to guaranty TSI against Black Creek's breach of warranty claim. The indemnity provision in the contract is extremely broad. Under Article 11, TSI is obligated to indemnify Black Creek "against any claim, liability, expense, loss or other damage in respect of . . . any breach of any representation or warranty contained in [the APA]." In addition, Alanco unconditionally guaranteed "each and every obligation of [TSI] under Article 11" of the APA.

¶20      Although inartfully written, the indemnity provisions are not limited to third party claims. TSI's agreement to indemnify Black Creek against claims for breach of the warranties contained in the APA can only apply to Black Creek's breach of warranty claim; no third party would have a warranty claim under the APA. We find no error in the court's conclusion that Alanco is a proper party as guarantor of TSI. *See Washington Elementary School Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 62 (1991) (stating that use of broad indemnification language indicates the parties contemplated coverage for any type of damage including that caused by the indemnitor).

II.     Attorneys' Fees

¶21      Because we vacate the court's damages award, we must also vacate the trial court's award of fees and costs to Black Creek. Section 19 of the APA directs the court to award reasonable attorneys' fees to the prevailing party in an action to enforce the provisions of the APA. Based on our decision in this case, the determination of which party has prevailed is premature. Upon final resolution of the parties' claims pursuant to the terms of the APA, the parties may then seek to have the court determine which party has prevailed for the purpose of awarding fees.

¶22      TSI/Alanco has prevailed on the majority of issues on appeal. We therefore grant the request for attorneys' fees on appeal subject to compliance with ARCAP 21. We also award TSI/Alanco its costs on appeal.

**CONCLUSION**

¶23      We affirm the court's conclusion that the AeroScout inventory breached the APA's warranty; however, we vacate the court's damages award and remand to the trial court to direct the parties to submit this dispute to the independent public accountants pursuant to § 3.2 of the APA. The trial court's attorneys' fee award is also vacated. TSI/Alanco are entitled to an award of fees on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama