IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JEAN M. MONROE, *Plaintiff/Appellee*,

*v.*

ARIZONA ACREAGE LLC, et al., *Defendants/Appellants*.

BOYD FAMILY PARTNERSHIP and JEAN M. MONROE,
*Plaintiffs/Appellees*,

*v.*

SUNNY LAKES RANCHOS LLC, et al., *Defendants/Appellants*.

Nos. 1 CA-CV 18-0476
1 CA-CV 18-0478
1 CA-CV 19-0170
1 CA-CV 19-0171
(Consolidated)
FILED 5-16-2019

Appeal from the Superior Court in Mohave County
Nos. S8015CV201400668
S8015CV201400669
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

COUNSEL

Lundberg & Elias, PLLC, Bullhead City
By T'shura-Ann Elias
*Counsel for Plaintiffs/Appellees*

Johnson & Gubler, P.C., Las Vegas, Nevada
By Matthew L. Johnson, Russell G. Gubler
*Counsel for Defendants/Appellants*

**OPINION**

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Maria Elena Cruz and Chief Judge Samuel A. Thumma joined.

**W I N T H R O P**, Judge:

¶1        These consolidated appeals arise from two class action lawsuits to foreclose on real property in Mohave County, Arizona. Defendants Arizona Acreage LLC ("AZ Acreage") and Sunny Lakes Ranchos LLC ("Sunny Lakes") (collectively "Appellants") appeal the superior court's denial of their cross-motions for partial summary judgment and grant of partial summary judgment in favor of representative plaintiffs Jean M. Monroe and Boyd Family Partnership (collectively "Appellees"). Co-defendant Leonard Mardian ("Mardian") also appeals the superior court's grant of judgment on the pleadings in favor of Appellees. For the following reasons, we hold: (1) the six-year statute of limitations in Arizona Revised Statutes ("A.R.S.") section 47-3118(A) (2019)[1] controls the underlying debts, the deeds of trust, and the guaranties signed by Mardian; (2) Appellees had standing to seek foreclosure of the deeds of trust; (3) the certification of each class satisfied the requirements for initiating a foreclosure action as outlined in the deeds of trust; and (4) Nevada Revised Statutes ("N.R.S.") section 645B.340 did not apply to bar Appellees' claims. We further reject Appellants' arguments concerning

---

[1]        Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this opinion have since occurred.

2

issue and claim preclusion. Because Appellees properly demonstrated they were entitled to judgment as a matter of law, we affirm the judgments entered.

## FACTS AND PROCEDURAL HISTORY

**¶2** In September 2006, Sunny Lakes executed a promissory note in favor of multiple lenders in exchange for $5,000,000. Over one hundred individuals and entities contributed money to the Sunny Lakes loan, and no lender contributed more than fourteen percent of the total loan value. The note was secured by a deed of trust encumbering several acres of undeveloped land in Mohave County ("Plot A"). In addition to the note and deed of trust, Mardian executed a guaranty agreement, promising to repay the loan in the event Sunny Lakes failed to do so.[2] The execution of the promissory note was conditioned on Mardian providing a personal guaranty on the note.

**¶3** In August 2007, AZ Acreage executed a promissory note in favor of multiple lenders in exchange for $4,000,000. Over eighty individuals and entities—many of whom contributed to the Sunny Lakes loan—contributed money to the AZ Acreage loan.[3] The loan was secured by a deed of trust encumbering another plot of undeveloped land in Mohave County ("Plot B"). No lender contributed more than twenty-one percent to the total loan value. Mardian also executed a guaranty agreement as a material condition for execution of the AZ Acreage loan.

**¶4** Both Sunny Lakes and AZ Acreage made payments on their respective notes until July 2008, when both companies stopped making payments. In late June 2014, believing the statute of limitations was just days from expiration, Appellees filed two class action lawsuits to foreclose

---

[2] Mardian's wife also executed a guaranty agreement for both loans. However, she filed for bankruptcy once the two lawsuits commenced and was subsequently dropped as a defendant in both cases.

[3] The interest in the promissory note was originally distributed as follows: eighty percent to a mortgage brokerage firm and the remainder to eighteen different lenders. The brokerage firm subsequently assigned its interest to several other investors, resulting in the current class of approximately eighty entities and individuals.

on Plot A and Plot B and recover any resulting deficiency.[4]  Although many of the investors contributed money to both promissory notes, some contributed towards one note but not the other—resulting in two different classes.  Sunny Lakes and Mardian were named defendants in one lawsuit (the "*Boyd* Case"); and AZ Acreage and Mardian were named defendants in the other lawsuit (the "*Monroe* Case").

¶5        Appellants moved to dismiss each case pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6), arguing that the four-year statute of limitations under A.R.S. § 12-544(3) applied and had expired and that Appellees lacked standing because they did not obtain the requisite fifty-one percent ("51%") majority agreement outlined in the deeds of trust to declare a default and bring a judicial foreclosure action.  The superior court denied Appellants' motions and later certified the classes.

¶6        Mardian then moved for summary judgment in both cases, arguing the four-year statute of limitations period in A.R.S. § 12-544(3) barred the claim against him for enforcement of the guaranty contracts.  Both sides briefed the issue and presented oral argument, and the court denied the motions.

¶7        Thereafter, Appellees moved for partial summary judgment to:  (1) establish the dollar amount due under each note; (2) establish that the classes were entitled to payment under the notes; (3) order a sheriff's sale of Plot A and Plot B; and (4) establish liability against each defendant for payment of any deficiency that may arise.  Appellants each cross-moved for summary judgment, again arguing the claims were barred by a four-year statute of limitations and Appellants had failed to bring the actions in accordance with the terms of the deeds of trust and controlling Nevada law.  In July 2018, the court granted the Appellees' motions in part—reserving the issue of Mardian's liability to pay a deficiency until after the properties were sold and a fair market value hearing could be held.  In its Rule 54(b) order, the court determined Sunny Lakes owed $13,870,277.75 on its promissory note plus interest, and AZ Acreage owed $10,933,666.62 on its promissory note plus interest.  Sunny Lakes and AZ Acreage timely

---

4        Although a promissory note secured by a mortgage and a promissory note secured by a deed of trust are different kinds of transactions, when a deed of trust is judicially foreclosed in Arizona, Arizona procedural law treats the foreclosure action the same as a judicial foreclosure of a mortgage.  *See* A.R.S. § 33-807(A).  Therefore, A.R.S. §§ 33-721 to -730 apply to the foreclosure actions in this case.

appealed the superior court's order in August 2018, and the appeals were consolidated.

**¶8**        While the first two appeals were pending, Plot A and Plot B were sold at a sheriff's sale in September 2018. Appellants and Mardian did not contest the sale price for either property, and the court vacated the fair market value hearing. Plot A sold for $80,000, resulting in a deficiency for Sunny Lakes. Plot B sold for $195,000, resulting in a deficiency for AZ Acreage.

**¶9**        A week later, Appellees moved for judgment on the pleadings, arguing Appellants and Mardian admitted all the material facts in the complaints and failed to show any viable defense to their claims. Appellants and Mardian opposed the motions. The court ultimately granted the motions and entered final Rule 54(c) judgments in favor of Appellees. Mardian appealed the judgments, and those appeals have been consolidated with the previous appeals. We have jurisdiction pursuant to A.R.S. § 12-120.21.

**ANALYSIS**

**¶10**        The promissory notes, deeds of trust, and guaranties were all executed in Nevada and include choice-of-law provisions designating Nevada law as governing the agreements. We therefore review the substantive issues according to the laws of Nevada but apply Arizona law to resolve any procedural issues. *Ross v. Ross*, 96 Ariz. 249, 251-52 (1964) ("Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, [and] statutes of limitation, depend upon the law of the place where the suit is brought.") (internal quotation omitted).

**¶11**        Appellants and Mardian raise three main arguments on appeal: (1) the Appellees' claims are barred by the doctrines of issue and claim preclusion; (2) the Appellees' claims are governed by a four-year statute of limitations and, accordingly, are untimely; and (3) the Appellees' claims are barred because they failed to obtain written consent of 51% of the lenders before filing the lawsuits, as required by the deeds of trust and by N.R.S. § 645B.340. We review each issue below.

     I.     *Issue Preclusion and Claim Preclusion Do Not Apply*

**¶12**        Appellants argue the holding in related litigation, *Karayan v. Mardian*, 690 Fed. Appx. 996 (9th Cir. 2017) (mem. decision), under the doctrines of issue and claim preclusion bars both class action lawsuits. Before the superior court, however, Appellants only argued that the

5

*Karayan* decision should preclude one class member, the Karayan Family Trust, from participating in the class. Appellants never argued that Appellees as class representatives should be barred from bringing suit, and we will not consider the argument for the first time on appeal. ARCAP 13(a)(7)(B); *In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010).[5]

II.      *Statutes of Limitations*

**¶13**          We review the application of each statute of limitations *de novo*. *Broadband Dynamics, LLC v. SatCom Mktg., Inc.*, 244 Ariz. 282, 285, ¶ 5 (App. 2018). We discuss the applicable limitations period for the deeds of trust and guaranty agreements separately.

A.      *The Judicial Foreclosure Claims Were Timely Filed*

**¶14**          Appellants failed to make payments on the notes starting in July 2008. The subject lawsuits were filed on June 27, 2014. Appellants contend the superior court erred by denying their cross-motions for summary judgment, arguing that the four-year limitations period under A.R.S. § 12-544(3) applies to bar Appellees' claims. Appellees assert the six-year limitations period under A.R.S. § 47-3118(A) applies and the claims were timely filed.

**¶15**          Section 12-544(3) provides, "[t]here shall be commenced and prosecuted within four years after the cause of action accrues . . . [an action] upon an instrument in writing executed without the state." Alternatively, A.R.S. § 47-3118(A) provides, "an action to enforce the obligation of a party

---

[5]      Even assuming the issue was properly preserved for appeal, Appellants' argument misses the mark. In *Karayan*, the federal district court determined that Nevada's statutorily-created "one action rule," N.R.S. § 40.435(2)(a) — and alternatively the "51% rule" set forth in N.R.S. § 645B.340 — applied to the plaintiff's claim and granted the defendants' motion to dismiss. Without addressing the "51% rule," the Ninth Circuit affirmed the ruling based on the "one action rule," determining the district court properly dismissed the claim without prejudice. A dismissal without prejudice does not preclude later litigation, and therefore is not considered a judgment "on the merits" for purposes of preclusion. Restatement (Second) of Judgments § 27 cmt. n (1982). As such, the Karayan Family Trust was free to file another action on the same claim; however, it chose instead to remain a class member in the current litigation. That choice was not precluded by the Ninth Circuit's ruling.

to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

**¶16** Both Appellants and Appellees rely on the proposition that where one statute of limitations has general application and another arguably competing statute of limitations is specific, the specific statute should prevail. *See Evans v. Young*, 135 Ariz. 447, 449 (App. 1983). The parties disagree, however, as to which of these arguably competing statutes is specific and controlling. Appellants argue § 12-544(3) is specific because it applies to instruments created outside this state and is therefore directly applicable to the promissory notes and deeds of trust executed in Nevada. In contrast, Appellees argue § 47-3118(A) is more specific and should prevail because it outlines the limitations period for particular negotiable instruments created pursuant to the Uniform Commercial Code ("U.C.C."), including promissory notes.

**¶17** When the Legislature "enacts a new statute that applies to preexisting statutes, we presume [the Legislature] intended some change in existing law." *Lavidas v. Smith*, 195 Ariz. 250, 254, ¶ 17 (App. 1999) (internal quotation omitted). In enacting statutory amendments, the Legislature is presumed to be "aware of existing statutes." *Washburn v. Pima Cty.*, 206 Ariz. 571, 576, ¶ 11 (App. 2003). "[W]hen there is conflict between two statutes, the more recent, specific statute governs over the older, more general statute." *In re Estate of Winn*, 214 Ariz. 149, 152, ¶ 16 (2007) (internal quotation omitted). Moreover, this court generally follows the rationale that "[t]he defense of the statute of limitations is not favored . . . and where two constructions are possible, the longer period of limitations is preferred." *Woodward v. Chirco Constr. Co., Inc.*, 141 Ariz. 520, 524 (App. 1984) (internal citation omitted).

**¶18** For decades, Arizona applied different limitations periods depending upon whether a written instrument was executed within Arizona or elsewhere. Under Section 2061 of the Arizona Revised Code of 1928, for example, an action "upon an instrument in writing executed without this state" had to be brought within four years after the claim accrued, while Section 2062 provided that an action for a written debt "upon a contract in writing, executed within this state, shall be commenced and prosecuted within six years after the cause of action has accrued." *Moore v. Diamond Dry Goods Co.*, 47 Ariz. 128, 131 (1936). The reason for this dichotomy as it existed decades ago is not certain. What is certain, however, is that the law has evolved since that time.

¶19        The U.C.C. was promulgated in 1953 and has been adopted in some form in all fifty states. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. U.S.*, 552 F.2d 302, 303, n.1 (9th Cir. 1977); *see also* William A. Schnader, *A Short History of the Preparation and Enactment of the Uniform Commercial Code*, 22 U. Miami L. Rev. 1, 1, 8 (1977). Article One § 1-103(a) of the U.C.C. (adopted as A.R.S. § 47-1103(A)) outlines three underlying purposes for the code: "(1) [t]o simplify, clarify and modernize the law governing commercial transactions; (2) [t]o permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) [t]o make uniform the law among the various jurisdictions." This court has previously explained that the U.C.C., as adopted in Arizona, must be "construed in accordance with [these] underlying purposes and policies." *Koss Corp. v. Am. Express Co.*, 233 Ariz. 74, 79, ¶ 13 (App. 2013).

¶20        As applicable here, in 1993, Arizona adopted Article Three of the U.C.C., which includes § 47-3118. *See* 1993 Ariz. Sess. Laws, ch. 108, § 6 (1st Reg. Sess.). This enactment, made long after the "within" or "without" general limitations periods in the Arizona Revised Code of 1928, deals solely with negotiable instruments—a specific subset of the "instruments" set forth in § 12-544(3).

¶21        Considering the more recent enactment of Article Three and the clear purpose and policies of the U.C.C., we conclude § 47-3118(A) is the more specific limitations statute and applies to the promissory notes and related deeds of trust at issue in this case. *See Valley Nat'l Bank of Ariz. v. Flagstaff Dairy*, 116 Ariz. 513, 519 (App. 1977) (explaining the U.C.C. should be interpreted in a way that does not create "violence to the obvious intent expressed in the provisions of the code" and does not "ignore commercial realities"). Interpreting § 47-3118(A) as the more specific statute furthers the overarching policies of the U.C.C.—particularly simplicity and uniformity in commercial transactions—by providing that, in Arizona as elsewhere, there is a six-year limitations period to enforce a negotiable instrument.

¶22        Our conclusion is supported by the fact that Nevada has also adopted the six-year statute of limitations period outlined in Article Three. *See* N.R.S. § 104.3118(1). And since Arizona's initial adoption of the U.C.C. in 1967, this court has interpreted § 12-544(3) only in regard to claims brought by a plaintiff seeking to enforce a foreign judgment. *See e.g.*, *Cristall v. Cristall*, 225 Ariz. 591 (App. 2010); *Grynberg v. Shaffer*, 216 Ariz. 256 (App. 2007); *cf. Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 439 (App. 1997). This narrow application of the older limitations provision

further supports our conclusion that the more recent limitations provision is specific to promissory notes and should therefore apply in this case.

**¶23** Finally, the Arizona Supreme Court has long "held that while the defense of the statute of limitations is a legitimate one, it is not favored by the courts, and, where two constructions are possible, the one which gives the longer period of limitations is the one to be preferred." *O'Malley v. Sims*, 51 Ariz. 155, 165 (1938). *O'Malley* has been followed by this court and the Arizona Supreme Court many times. *See e.g.*, *San Manuel Copper Corp. v. Redmond*, 8 Ariz. App. 214, 218 (1968); *Guertin v. Dixon*, 177 Ariz. 40, 45 (App. 1993); *Physical Therapy Assocs., Inc. v. Pinal Cty.*, 154 Ariz. 405, 407 (App. 1987); *Woodward*, 141 Ariz. at 524. For all of these reasons, we conclude § 47-3118(A) applies to the promissory notes and deeds of trust at issue in this case and Appellees' claims were timely filed. *See Nat'l Bank of Ariz. v. Schwartz*, 230 Ariz. 310, 312, ¶ 7 (App. 2012) ("[T]he debt and all the potential recovery flow from the promissory note.").

### B. The Breach of Guaranty Claims Were Timely Filed

**¶24** Mardian argues Arizona case law establishes that provisions from the U.C.C., as codified in Arizona, do not apply in any respect to guaranty agreements—regardless of the underlying instrument the guaranty agreement relates to—because the guaranty is a separate contract. He therefore contends that the shorter four-year limitations period of A.R.S. § 12-544(3) should apply to bar Appellees' claim against him, irrespective of whether the six-year limitations period of A.R.S. § 47-3118(A) applies to the judicial foreclosure claims against Appellants.[6]

**¶25** Mardian correctly states that Arizona treats guaranty agreements as contracts separate from their related instruments. *Flori Corp. v. Fitzgerald*, 167 Ariz. 601, 602 (App. 1990). However, we do not agree that the cases Mardian relies upon broadly prohibit U.C.C. application to all guaranty agreements. *Pi'Ikea, LLC v. Williamson*, 234 Ariz. 284 (App. 2014), and *Consolidated Roofing & Supply Co., Inc. v. Grimm*, 140 Ariz. 452 (App. 1984), addressed continuing guaranty agreements—unconditional promises to pay any debt that a borrower creates with a lender. Here,

---

[6] Mardian also argues the purported waiver of the statute of limitations defense provided for in the express terms of the guaranty agreements is void as against public policy. Because we determine the breach of guaranty claims were timely filed, we do not address this argument.

Mardian signed specific guaranty agreements, which obligated him to repay only the debts of the particular promissory notes related to each loan. Further, in *Grimm*, this court contemplated that the U.C.C. could apply to a guaranty agreement in situations where the borrower under a negotiable instrument is an entity owned by the guarantor. *See Grimm*, 140 Ariz. at 456. We determine that this case is such a case. Accordingly, § 47-3118(A) applies to Appellees' breach of guaranty claims against Mardian.

¶26        We reach this conclusion after examining the unique facts of this case. At the time of execution, Mardian was the owner and managing member of both AZ Acreage and Sunny Lakes. He signed both promissory notes on behalf of each entity, and he executed each guaranty agreement as a material condition to obtaining each loan. The guaranty agreements were executed days before the promissory notes, and a copy of each promissory note was attached as an exhibit to each guaranty agreement. On these facts, it would be illogical to hold that A.R.S. § 12-544(3) applies and the limitations period governing Mardian's liability to repay the debts should be shorter than that of Appellants'.[7] Absent any prior agreements to the contrary by the parties, the applicable statute of limitations for bringing a claim on the guaranty agreements should not expire before the statute of limitations on the underlying promissory notes. *See Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1321 (5th Cir. 1992) ("We recognize that, as a general rule, the liability of a guarantor is equal to that of its principal.").

¶27        Therefore, we conclude § 47-3118(A) applies and the superior court did not err in finding that Appellees timely filed a claim against Mardian. *Beck v. Hy-Tech Performance, Inc.*, 236 Ariz. 354, 360, ¶ 23 (App. 2015) ("On appeal, we will sustain the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may

---

[7]        Other jurisdictions have recognized the U.C.C.'s applicability to guaranty agreements executed separate from their related promissory notes where the facts show the guaranty was an essential part of a loan transaction. *See Gunter v. True*, 416 S.E.2d 768 (Ga. Ct. App. 1992) (holding that the U.C.C. governed a guaranty agreement written on a separate piece of paper where the guaranty was executed contemporaneously with the promissory note; the guaranty applied exclusively to the debt evidenced in the note; and the note and guaranty were affixed together); *Commerce Bank of St. Louis, N.A. v. Wright*, 645 S.W.2d 17, 20 (Mo. Ct. App. 1982) (holding that the U.C.C. governed a separate guaranty agreement when it was related exclusively to the promissory note and was an "integral part" of executing the loan transaction).

differ from our own.") (quoting *Lake Havasu Resort, Inc. v. Commercial Loan Ins. Corp.*, 139 Ariz. 369, 373 (App. 1983)).

### III. The 51% Requirement Under the Default Clause and N.R.S. § 645B.340

**¶28** Appellants argue the claims are barred because Appellees lacked standing to sue. They assert Appellees did not comply with certain terms of the default clause that had to be met before bringing the foreclosure actions. In the alternative, Appellants contend Appellees' claims are barred for failure to comply with N.R.S. § 645B.340.

**¶29** Each deed of trust included a default clause stating:

### Section 11.33
### Default Clause

The Beneficiaries herein named agree and affirm the provision that any default of this Deed of Trust may be declared by the Beneficiaries holding a minimum of 51% of the beneficial interest in said Deed of Trust, and in addition, those Beneficiaries holding a minimum 51% beneficial interest may commence foreclosure proceedings against the Trustor herein, upon a declared default.

### A. Appellees Sufficiently Pled a Declared Default

**¶30** Appellants argue Appellees did not have standing to bring these claims because they did not obtain the agreement of 51% of the lenders before declaring a default on the deeds of trust.

**¶31** To initiate a claim in Arizona, a party must have standing—that is, a plaintiff must allege a "distinct and palpable injury." *See Sears v. Hull*, 192 Ariz. 65, 69, ¶ 16 (1998) (citation omitted); *see also Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 603, ¶ 17 (App. 2016). "[T]he question of standing in Arizona is not a constitutional mandate . . . [and] [i]n addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial restraint." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Serv. in Ariz.*, 148 Ariz. 1, 6 (1985). Stated differently, "[t]he issue in Arizona is whether, given all the circumstances in the case, the [plaintiff] has a legitimate interest in an actual controversy . . . and whether judicial economy and administration will be promoted by allowing representational appearance." *Id.*

¶32    Here, Appellees alleged in their complaints that a default under the deeds of trust had occurred, resulting in the full amount being due under each note. Appellees' motions for partial summary judgment asserted that Appellants were in default as of July 1, 2008. Appellants originally challenged the sufficiency of a specific "declared default" date in their 2014 motion to dismiss, but later abandoned this position and did not contest the July 1, 2008 date in their response to the motions for partial summary judgment or their cross-motions for summary judgment. On this record, Appellees sufficiently established an injury—the July 1, 2008 default—giving them standing to bring both lawsuits.

¶33    It is undisputed that Appellants failed to make payments on either note since July 1, 2008. It also is undisputed that each class is owed money under the notes. Furthermore, Appellants have not asserted that they were improperly prejudiced or damaged in this litigation due to the alleged failure to properly "declare" a default. *See* Ariz. R. Civ. P. 61. Therefore, we determine that "judicial economy and administration" is promoted by affirming that Appellees have standing to seek recovery for the money owed under each note. *Armory Park Neighborhood Ass'n*, 148 Ariz. at 6.

### B.    *Appellees Met the Deeds of Trust's 51% Requirement*

¶34    Appellants next argue Appellees lack standing because the default clause required written consent by a 51% majority of lenders before this action could be commenced. Appellees assert the deeds of trust do not require written consent; instead, the deeds of trust required 51% of lenders to simply "agree" in order to pursue the judicial foreclosures. Appellees further assert that the certification of the classes satisfied the 51% requirement because the lenders were specifically given a chance to opt-in or opt-out of the lawsuits, and the affirmation from all but five of the lenders to opt-in related back to the filing of the complaints. The superior court found that by providing notice to the class members and an opportunity to opt-out, Appellees complied with the 51% majority requirement under the default clause.

¶35    Nevada law governs the interpretation of the default clause, which is a question of law reviewed *de novo*. *May v. Anderson*, 121 Nev. 668, 672 (Nev. 2005). In interpreting a contract, "the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215 (Nev. 2007) (internal quotation omitted). "[A]n interpretation which renders the contract or agreement valid and its

performance possible will be preferred to one which makes it void or its performance impossible or meaningless." *Mohr Park Manor, Inc. v. Mohr*, 83 Nev. 107, 111 (Nev. 1967). Likewise, "an interpretation which makes the contract or agreement fair and reasonable will be preferred to one which leads to harsh or unreasonable results." *Id.*

¶36 In 2011, the Nevada federal district court aptly explained the basic principle behind including a 51% agreement requirement in contracts related to mortgage loans with multiple lenders. The court there stated:

> Nevada Administrative Code section 645B.073 requires—and did so long before Nevada Revised Statutes section 645B.340(1) passed—that any document related to a mortgage loan must contain a provision to allow the holder of 51% or more of the beneficial interests in the loan to act on behalf of all the remaining beneficial interest holders in that loan. . . . The 51% Rule recognizes that 51% or more of the fractional beneficial interest holders in a loan are entitled to exercise management control over that loan, including designating their loan servicer and deciding whether to foreclose on a loan[] [or] to sell foreclosure property . . . . The 51% Rule is premised on the fact that the fractional beneficial interest holders are the owners of their loans.

*In re USA Commercial Mortg. Co.*, 802 F.Supp.2d 1147, 1159 (D. Nev. 2011).

¶37 Applying the principles outlined in *In re USA Commercial Mortgage*, we conclude the superior court did not err in permitting the class certification to relate back to the date of the filing of the complaints, thereby satisfying the 51% requirement in the default clause. That decision effectuated the purpose of the default clause—that a majority of the lenders are entitled to exercise management and control over the loans. *See DeChambeau v. Balkenbush*, 431 P.3d 359, 362 (Nev. Ct. App. 2018) ("When examining the supposed 'intent' behind contractual words, what matters is not the subjective intention of the parties . . . but rather the more objective inquiry into the meaning conveyed by the words they selected to define the scope of the agreement.") (internal citation omitted). The consensus among a majority of the lenders was sufficiently evidenced by the lenders opting-in to the class action lawsuits. All but five—three in the *Boyd* Case and two in the *Monroe* Case—explicitly chose to pursue the judicial foreclosures and assert their rights to collect any deficiency that resulted from the sales.

¶38        Appellants had not made payments on the notes at the time Appellees initiated the lawsuits and have not alleged they were prejudiced in any way by the class certification process effectively satisfying the 51% agreement. Indeed, Appellants could have filed a counterclaim for breach of contract if they felt their rights under the deeds of trust were violated, but they did not. *Steinberger v. McVey ex rel. Maricopa Cty.*, 234 Ariz. 125, 140-41, ¶¶ 67-72 (App. 2014) (explaining a trustor may bring a breach of contract claim in Arizona to recover attorneys' fees, costs, and accruing interest on a promissory note when the beneficiary failed to comply with certain procedures outlined in the deed of trust that had to be performed before the beneficiary could attempt to foreclose on the secured collateral). Likewise, Appellants could have identified and asserted any prejudice on appeal once the classes were certified in 2015. *See* A.R.S. § 12-1873(A). They did not do so, however, and have not shown any reversible error regarding the 51% requirement. *See* Ariz. R. Civ. P. 61.

### C.     *N.R.S. § 645B.340's 51% Majority Requirement Does Not Apply to The Deeds of Trust*

¶39        Appellants argue in the alternative that N.R.S. § 645B.340 required written consent by at least 51% of the lenders under each note thirty days before the lawsuits could be filed, and Appellees' claims therefore should be barred for failure to adhere to the statute's requirements. Appellees assert that the class certification process and order satisfied the requirements of the statute, or alternatively, the statute does not apply because the terms in the deeds of trust outline and control the requirements for foreclosure proceedings. The superior court found that the class certification sufficiently complied with the terms of N.R.S. § 645B.340.

¶40        Without deciding whether the superior court erred in finding the class certification complied with the thirty-day requirement in N.R.S. § 645B.340(2), we conclude the statute does not apply to bar Appellees' claims because the deeds of trust—and not the statute—controlled the parties' agreements. *See Beck*, 236 Ariz. at 360.

¶41        Section 645B.340 states it is applicable only when the parties have not made other agreements for when the "holders of [the] majority" may act. Under the express terms of the statute, either the statute or the deeds of trust—but not both—control in this case.

¶42        The default clause demonstrates the parties expressly contemplated the procedure for when the majority could initiate

"foreclosure proceedings."[8]  Unlike the statute, the deeds of trust impose no thirty-day written notice requirement on the lenders before filing a judicial foreclosure.  If the parties intended to require a written notice be distributed before a foreclosure action was commenced, they were free to explicitly state as much in the deeds of trust.  Indeed, other clauses in the contracts include a written notice requirement, but the default clause does not.  We therefore conclude N.R.S. § 645B.340 does not apply to Appellees' claims.

### IV.    Attorneys' Fees and Costs on Appeal

¶43        Appellees request an award of attorneys' fees and costs on appeal pursuant to ARCAP 21 and A.R.S. § 12-341.01.  Appellants do not oppose the request.  Each promissory note and guaranty agreement provided that Appellees may recovery their attorneys' fees and costs in actions arising from the execution of the loan agreements.  We therefore award Appellees their reasonable attorneys' fees and costs upon compliance with ARCAP 21.[9]

## CONCLUSION

¶44        For the stated reasons, we affirm the superior court's grant of partial summary judgment and judgment on the pleadings in favor of Appellees.

AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[8]     The parties' intent that the default clause would govern their agreements is further confirmed by the inclusion of an integration clause in the contract language.

[9]     Because the parties contractually agreed to the award of attorneys' fees and costs, we do not address whether an award of fees and costs is supportable under A.R.S. § 12-341.01.  *See First Interstate Bank of Nev. v. Green*, 101 Nev. 113, 116 (Nev. 1985) (stating attorneys' fees are recoverable under Nevada law if authorized by an agreement between the parties).