NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WORLDWIDE JET CHARTER, INC., *Plaintiff/Appellant*,

*v.*

CHRISTOPHER MOEN, *Defendant/Appellee*.

No. 1 CA-CV 21-0614
FILED 7-19-2022

Appeal from the Superior Court in Maricopa County
No. CV 2020-095695
The Honorable Stephen M. Hopkins, Judge

**AFFIRMED**

COUNSEL

Denton Peterson Dunn PLLC, Mesa
By Brad A. Denton, Larry A. Dunn, Dustin D. Romney
*Counsel for Plaintiff/Appellant*

Vasin & Rocco PLLC, Mesa
By Mitchell A. Vasin
*Counsel for Defendant/Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

_____

**C A M P B E L L**, Judge:

¶1   Worldwide Jet Charter, Inc. appeals the superior court's order dismissing its complaint as time barred and awarding attorneys' fees and costs to Christopher Moen. Finding no error, we affirm.

### BACKGROUND

¶2   Worldwide offers charter jet services and hired Moen as a pilot. On October 5, 2015, the parties signed a Conditional Offer of Employment (Offer) with two attached exhibits: a Promissory Note (Note) and a Training Reimbursement Agreement (TRA).

¶3   The Offer required that Moen complete a Federal Aviation Administration (FAA) approved training program before Worldwide would hire him. The cost of the FAA training was Moen's responsibility, but the Offer outlined that Worldwide would provide financing in accordance with the terms of the attached Note and TRA. The funds provided pursuant to the Note were payable over a two-year period. As long as Moen was employed by Worldwide, Worldwide would make payments on his behalf, but if he ceased to be employed during the two-year period, then he became responsible for any balance owing on the Note. Under the Note, Worldwide could also demand reimbursement for the costs of training, including costs for training registration, travel, transportation, food, lodging, and wages. Moen completed his training in December 2015. He resigned from Worldwide in February 2016. Worldwide did not demand any payment on the Note over the next four years and Moen did not make any payments.

¶4   In October 2020, Worldwide filed a complaint alleging breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Worldwide claimed that Moen breached the Offer, Note, and TRA by failing to make payments on the Note after his resignation. Moen moved to dismiss under Arizona Rule of Civil Procedure (Rule) 12(b)(6), arguing that Worldwide's claims related to a breach of an

employment contract and were barred by a one-year statute of limitations. *See* A.R.S. § 12-541(3) (establishing a one-year statute of limitations for actions for a breach of an employment contract). The superior court agreed that § 12-541(3) applied and dismissed the complaint. The court found that the Offer, Note, and TRA were part of one agreement relating to Moen's employment obligations and compensation.

¶5            Worldwide filed a Motion for Leave to File First Amended Complaint (Motion for Leave to Amend) arguing that the court "was operating under some incorrect assumptions." In its proposed amended complaint, Worldwide alleged that Moen breached *only* the Note and TRA. Worldwide also added that the Note and TRA were "intended by the parties to be separate from the parties' employment agreement" and are subject to a longer period under the statute of limitations applicable to action for debt collection on contract claims. *See* A.R.S. §§ 12-548(A)(1) (actions for debt based on a written contract), 47-3118(A) (actions to enforce a promissory note). Worldwide included several pages of facts explaining that the training was offered independently of Moen's employment contact and that Moen could have obtained it—and paid for it—on his own. Worldwide also stated that Moen was not considered an employee until after he completed his training.

¶6            The superior court denied Worldwide's Motion for Leave to Amend. The court treated the motion as a motion for reconsideration. The court noted that Worldwide presented several arguments about why the dismissal should be re-examined, but determined that the proposed amendments did not change the analysis and affirmed the ruling dismissing the case. Worldwide then filed a Motion for Reconsideration and for Leave to File Reply to Response to Motion to Amend (Motion for Reconsideration). Worldwide argued that the specific intent of the parties was an issue of fact that the court refused to consider. Worldwide also argued that the court erred in treating the Motion for Leave to Amend as a motion for reconsideration because the factors for denying a motion for reconsideration are different than those for a denial of a motion for leave to amend. The court denied Worldwide's Motion for Reconsideration.

¶7            Moen requested attorneys' fees and costs. In response, Worldwide argued that the superior court should not award fees because although Worldwide's claims were unsuccessful, they were still meritorious because Worldwide believed a longer statute of limitations applied. The court rejected Worldwide's argument because the parties' contract specifically required an award for all attorneys' fees and costs. The court awarded Moen $4,278.55 in fees and costs.

¶8            The superior court issued a final judgment for fees in favor of Moen and dismissed Worldwide's claims with prejudice. Worldwide timely appealed.

## DISCUSSION

¶9            Worldwide challenges the superior court's application of a one-year statute of limitations to its claims and the court's denial of its motion for leave to amend. Because it contends the court erred in dismissing the complaint and denying the motion for leave to amend, Worldwide also asks this court to reverse Moen's award of attorneys' fees.

## I.        Employment Contract

¶10          Worldwide argues that the Note and TRA are separate agreements and should be analyzed independently of the Offer. The interpretation of a contract is an issue of law that we interpret de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

¶11          "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Id*. We look first to "the plain meaning of the words in the context of the contract as a whole," and if the parties' intent is "clear and unambiguous," we apply the language as written. *Id*. To determine whether a document is incorporated by reference, the court looks at whether the incorporating document clearly evidences "an intent that the writing be made part of the contract." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983). If a document is referenced "for a particular purpose, expressed in the contract, it becomes part of it only for that purpose." *Id*. at 259 (emphasis and citation omitted).

¶12          Worldwide argues the parties intended for the TRA and Note to be separate contracts and did not intend to incorporate the Note and TRA into the Offer. Specifically, Worldwide relies on the TRA, which provides: "WHEREAS, Worldwide [ ] and 'Employee' recognize that this Agreement is not intended to constitute any type of employment agreement or guarantee of continued employment." While this term reflects the parties' intent that the TRA, on its own, would not constitute an employment agreement, it does negate the parties' intent that to accept the Offer, Moen needed to complete the TRA as secured by the Note. In other words, the Offer, the TRA, and the Note operated together—without the training secured by the Note, the offer of employment would not be extended. Further, the Note does not contain any provision to reflect the parties' intent that the Note be a separate, non-employment-related contract. The three documents and the obligations that were set forth thereunder were all

4

necessary for the employment relationship contemplated by the parties to the contract.

¶13        To begin, we look at the Offer to determine whether the parties' intended to incorporate the TRA and Note as part of the contract. *See United Cal. Bank*, 140 Ariz. at 258. The Offer states:

> Any employment is contingent on your successful completion of a pre-employment drug screening, background check, successful completion of all initial new hire training and your signing of the *attached training reimbursement agreement*. The following are some of the more significant benefits, terms, and conditions of your conditional offer of employment:
>
> Training: You are required to successfully complete an FAA approved training and checking program . . . The total cost of this training and checking program is $32,117.00 (the "Training Costs") and is your responsibility. The Company has agreed to finance the Training Costs on your behalf in accordance with the terms contained in the Promissory Note *attached hereto* as Exhibit "A" (the Promissory Note) along with the *attached* Training Reimbursement Agreement. For so long as you remain employed with the Company, the Company agrees to make all payments which are required to be paid by you under the terms of the Promissory Note. If you cease to be employed by the Company for any reason whatsoever prior to the full and complete payment of the Promissory Note, the Company's obligation to pay any amounts on your behalf will cease on the date that you cease to be employed by the Company, and you will be responsible to pay the unamortized balance owed in accordance with the terms contained in the Promissory Note.

(Emphasis added).

¶14        The Note explains that payments shall be made in monthly installments for two years "as set forth on the Amortization Schedule attached hereto as Schedule "A" (the "Payments")."

¶15        Worldwide argues that the mere attachment of the Note and TRA to the Offer is insufficient to show that the parties intended to incorporate the documents. *See United Cal. Bank*, 140 Ariz. at 258 (noting that physical attachment and specific language are not necessary to incorporate a document). But the Offer's plain language reflects the parties'

intent to incorporate the Note and TRA. The Offer not only references the Note and TRA, but it also refers to both documents as terms and conditions precedent to Moen's employment with the company. Without the Note and TRA, the training provision contained in the Offer would be nonsensical—Worldwide would not hire Moen unless he completed the training financed under the terms of the Note.

**¶16** Worldwide also argues that under *Mesa Airlines, Inc. v. Condron*, the Note and TRA should be interpreted as separate contracts. 1 CA-CV 16-0326, 2017 WL 4638171 (Ariz. App. Oct. 17, 2017) (mem. decision). In *Mesa Airlines* the issue was whether the parties' employment agreement incorporated a separately executed collective bargaining agreement. *Id*. at *1, ¶¶ 2-3. Here there is no separately executed contract, but a contract with two exhibits attached and referenced in the Offer itself. Because we find the plain language of the parties' contract shows an intent to incorporate the TRA and Note, we reject this argument. The superior court did not err in concluding that the Offer incorporated the TRA and Note, and that the documents were not separate agreements.

## II. Statute of Limitations

**¶17** Worldwide argues that its cause of action is governed by the six-year statute of limitations outlined in §§ 12-548(A)(1) (actions for debt based on a written contract) and 47-3118(A) (actions to enforce a promissory note). We review questions of law, including dismissal under Rule 12(b)(6) and the application of statute of limitations de novo. *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 516, ¶ 10 (2021); *Monroe v. Ariz. Acreage LLC*, 246 Ariz. 557, 562, ¶ 13 (App. 2019).

**¶18** The superior court held that a one-year statute of limitations applied to Worldwide's claims because the Offer, Note, and TRA were part of one employment contract. The court defined an "employment contract" as "a contract between an employer and employee in which the terms and conditions of employment are stated." *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 218 Ariz. 293, 295, ¶ 7 (App. 2008) (quotation and citation omitted). The court found the Offer, Note, and TRA constituted one employment contract because the training and TRA were required for Moen's employment and the Note and TRA were included as part of the Offer. Worldwide contends that *Redhair* is factually distinct and inapplicable here.

**¶19** The issue in *Redhair* was whether § 12-541(3) applied to an oral contract for an employee bonus. 218 Ariz. at 294-95, ¶¶ 3-4. Although the

facts are distinguishable, the court's analysis of an "employment contract" for the purposes of § 12-541(3) applies here. *See also Lytikainen v. Schaffer's Bridal LLC*, 409 F. Supp. 3d 767, 774 (D. Ariz. 2019) (recognizing that employment contract is defined by its ordinary meaning). The Offer (including the Note and TRA) meets the definition of an employment contract because it defined the terms and conditions of Moen's employment with Worldwide, specifically that Worldwide agreed to finance his training pursuant to the Note and TRA.

¶20        Worldwide also argues that even if the TRA and Note were integrated with the Offer, §§ 12-548(A)(1) and 47-3118(A) still apply because Worldwide's action is for a recovery of a debt, not a breach of an employment obligation. Worldwide asks this court to bifurcate the contracts into employment and nonemployment issues to determine which statute of limitations applies to each portion of the three agreements.

¶21        We decline to do so. Worldwide's cause of action arose from Moen's breach of his employment obligations under the Offer, Note, and TRA. Specifically, the Offer required Moen to complete FAA training, which Worldwide agreed to finance, as a condition of his employment offer. The Offer also required Moen to maintain employment for two years, at which time Worldwide would absorb the entire cost of the training. Moen completed his training in December 2015 and resigned in February 2016, and Worldwide waited four years to bring its claim for reimbursement of the training costs. The Note provides that "[i]n the event of a default," Worldwide "may demand payment of the entire unpaid indebtedness." But Worldwide's cause of action did not arise from any default under the Note; it arose from Moen's resignation from employment. Had a non-employment related default occurred, then whether the cause of action could be bifurcated as a non-employment issue may raise a different question. But under the circumstances here, Worldwide's claim cannot be bifurcated as a "non-employment issue" because it arose from Moen's employment obligations under the agreements.

¶22        Worldwide contends that §§ 12-548(A)(1) (actions for debt based on a written contract) and 47-3118(A) (actions to enforce a promissory note) conflict with § 12-541(3) (employment contracts), and thus the longer and more specific statute of limitations should apply. *See Monroe*, 246 Ariz. at 562, ¶ 17 (noting that where there are conflicting statutes of limitations, the court may apply the more specific or longer limitation period). Worldwide argues it only needed to demonstrate a possibility that § 12-548(A)(1) applied to its claims to show that a conflict exists. Because we conclude that the nature of Worldwide's claim is for a breach of an

employment contract, and not for a recovery of a separate debt, we find no conflict between the statutes and agree with the superior court that the shorter, employment contract statute of limitations applies.

## III.    Motion for Leave to Amend the Complaint

**¶23**        Worldwide argues that the superior court erred in denying the Motion for Leave to Amend and abused its discretion in treating the motion as a motion for reconsideration. Worldwide contends the court applied the wrong legal standard when denying the motion, and that the proposed amended complaint included new facts that precluded dismissal of the claim.

**¶24**        We review the denial of a motion for leave to amend for an abuse of discretion. *Swenson v. Cnty. of Pinal*, 243 Ariz. 122, 128, ¶ 21 (App. 2017). An abuse of discretion exists when the superior court's judgment is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 16 (App. 2009). It is not an abuse of discretion to deny a motion for leave to amend "if the amendment would be futile." *Swenson*, 243 Ariz. at 128, ¶ 21. "In determining whether the court abused its discretion, we presume that the facts alleged in the complaint are true." *Timmons v. Ross Dress For Less, Inc.*, 234 Ariz. 569, 572-73, ¶ 17 (App. 2014) (quotation and citation omitted).

**¶25**        Taking the facts alleged in the proposed amended complaint as true, Worldwide's complaint was still time barred. Worldwide points to additional portions of the documents in support of the argument that the parties intended that the TRA and Note be separate agreements. But as discussed above, the Note and TRA were part of the Offer. Worldwide is not in the business of financing pilot training independent of employment. In fact, the Offer specifically stated that Moen's employment was contingent upon his "signing of the attached [TRA]."

**¶26**        Worldwide's newly added facts did not change the fact that Worldwide sought recovery for breach of an employment contract and thus the proposed amendments were futile. Even if the superior court erred in treating the motion for leave to amend as one for reconsideration, the court did not abuse its discretion in denying the motion.

**CONCLUSION**

**¶27** We affirm the superior court's final judgment dismissing Worldwide's complaint and awarding attorneys' fees to Moen. The Offer provides that "the prevailing party" in "an action . . . brought to enforce or construe the provisions of this Agreement . . . shall be awarded all filing fees, expenses, costs, and attorneys' fees." *See also* A.R.S. § 12-341.01(A). As the prevailing party, we grant Moen's request for attorneys' fees and costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA