IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WORLDWIDE JET CHARTER, INC., *Plaintiff/Appellant*,

*v.*

GUS CHRISTOPHER TOULATOS, *Defendant/Appellee*.

WORLDWIDE JET CHARTER, INC., *Plaintiff/Appellant*,

*v.*

DISAPONG SILBERMAN, *Defendant/Appellee*.

Nos. 1 CA-CV 21-0717
1 CA-CV 22-0173
(Consolidated)
FILED 12-15-2022

Appeal from the Superior Court in Maricopa County
Nos.   CV2020-095740
CV2020-095755
The Honorable Stephen M. Hopkins, Judge

**AFFIRMED**

COUNSEL

Denton Peterson Dunn PLLC, Mesa
By Larry A. Dunn, Dustin D. Romney, Brad A. Denton
*Counsel for Plaintiff/Appellant*

Yen Pilch Robaina & Kresin PLC, Phoenix
By David C. Kresin, Michael Pang
*Counsel for Defendant/Appellee Gus Christopher Toulatos*

Vasin & Rocco PLLC, Mesa
By Mitchell A. Vasin
*Counsel for Defendant/Appellee Disapong Silberman*

---

## OPINION

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        In three appeals, Worldwide Jet Charter, Inc. (Worldwide) has challenged the dismissal of its complaints against former employee-pilots for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. In the first appeal, *Worldwide Jet Charter, Inc. v. Moen* (*Moen*), 1 CA-CV 21-0614, 2022 WL 2812786 (Ariz. App. July 19, 2022) (mem. decision), we affirmed, finding the one-year statute of limitations applicable to employment contracts barred Worldwide's claims. *See* A.R.S. § 12-541(3). Finding no reason to distinguish Worldwide's claims in these consolidated appeals, we affirm the dismissals in both cases.

### BACKGROUND

¶2        Worldwide provides charter jet services and extended offers to hire the defendants, Gus Christopher Toulatos and Disapong Silberman, as pilots. Worldwide provided the defendants conditional offers of employment (Offer) that were substantively identical, each with two attached exhibits: a promissory note (Note) and a training reimbursement agreement (TRA). Toulatos signed the documents in June 2016, and Silberman signed them in September 2018.

¶3            As outlined in the Offer, the defendants' employment was contingent upon their completion of the specified flight training.[1] Although each defendant was financially responsible for his training, the Offer stated that Worldwide would advance the training costs in accordance with the terms in the attached Note and TRA. The Note provided for payments over two years, but Worldwide agreed to credit the defendants for these payments if they remained employed. If their employment ended before the two-year period expired, however, the defendants became responsible for any balance due. And, if the defendants did not successfully complete the training or terminated their employment within three months after completing the training, they were responsible for the entire cost.

¶4            Toulatos completed the training in July 2016 and resigned 14 months later. Worldwide did not demand any payment from Toulatos until it sued him more than three years later. Silberman completed his training in October 2018, and Worldwide terminated his employment one year later. Worldwide then waited more than one year to sue Silberman.

¶5            In separate complaints, Worldwide alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment based on the defendants' failure to repay the training costs after their employment ended. In their respective cases, Toulatos and Silberman moved to dismiss under Arizona Rules of Civil Procedure (Rule) 12(b)(6), arguing Worldwide's complaints were time-barred by the one-year statute of limitations applicable to employment contracts. *See* A.R.S. § 12-541(3). The superior court agreed and dismissed both complaints, rejecting Worldwide's argument that the Note and the TRA were separate from the Offer and subject to the longer limitations periods applicable to actions to collect a debt and enforce a promissory note. *See* A.R.S. §§ 12-548(A)(1) (six year limitations period for actions for debt based on a writing); 47-3118(A) (six year limitations period for actions to enforce a promissory note).

¶6            In response to the motions to dismiss, Worldwide sought to amend its complaint, arguing that the superior court dismissed the complaint based on incorrect factual assumptions. Worldwide proposed identical amended complaints in both cases, alleging that the parties intended the Note and the TRA to be separate agreements, severable from the employment agreement, independently enforceable, and subject to

---

[1] The Silberman Offer states, "Until you complete and successfully pass [the training], the Company will not employ you." (Emphasis added.) The underlined language is omitted in the Toulatos Offer. This difference does not affect our analysis.

longer limitations periods. The superior court denied the motions to amend the complaint as futile.

¶7 The superior court then denied Worldwide's motion for reconsideration and awarded attorneys' fees and costs to Toulatos ($11,187.50) and Silberman ($3,999.25) based on the fee provision in the Offer. After entry of final judgment, Worldwide timely appealed.

## DISCUSSION

¶8 Worldwide challenges the superior court's application of the one-year statute of limitations and its orders denying leave to amend the complaints. The contracts and issues here are substantively identical to those addressed in *Moen,* involving the same plaintiff and another pilot-defendant, and we agree with and follow that decision.

## I. Employment Contract

¶9 As in *Moen,* Worldwide argues that the parties intended for the Note and the TRA to constitute separate agreements, independent of the Offer. The interpretation of a contract presents a question of law, which we review de novo. *Grosvenor Holdings, L.C. v. Figueroa,* 222 Ariz. 588, 593, ¶ 9 (App. 2009).

¶10 "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Id.* To do so, "we first consider the plain meaning of the words in the context of the contract as a whole." *Id.* (citing *United Cal. Bank v. Prudential Ins. Co. of Am.,* 140 Ariz. 238, 259 (App. 1983)). If the text is unambiguous, we apply the language as written. *Grosvenor,* 222 Ariz. at 593, ¶ 9. The parties' disagreement about the meaning of the language does not, by itself, constitute an ambiguity. *United Cal. Bank,* 140 Ariz. at 258.

¶11 Relying on language in the TRA that states, "WHEREAS, [Worldwide] and Employee acknowledge and agree that this [TRA] is not intended to constitute any type of employment agreement or guarantee of continued employment[,]" Worldwide asserts that the parties did not intend to incorporate the Note and the TRA into the Offer. While this term suggests an intent that the TRA is not a stand-alone employment agreement, it does not negate the requirement that to accept the Offer, the defendants had to accept the TRA secured by the Note. In other words, Worldwide conditioned its offer of employment on the defendants' acceptance of the Offer, the Note, and the TRA. Thus, the three documents

operated together, and the obligations in the three documents were all required to form the employment relationship contemplated by the parties.

¶12        The Offer demonstrates the parties' intent to incorporate the Note and the TRA as part of the contract, stating in relevant part:

> Your employment is contingent upon your successful completion of [various requirements] and your signing *of this letter agreement and each of the attached exhibits.* The date of your successful completion of all of these items will be your "Effective Hire Date."
>
> The following are some of the more significant benefits, *terms and conditions* of your conditional offer of employment.
>
> . . .
>
> [ ]    Initial Training. You are required to successfully complete Worldwide Jet Charter's approved initial training and checking program such that you can be added to the Company's Certificate . . . . The cost of this training and checking program is [$35,378.08 in the Toulatos Offer and $40,448 in the Silberman Offer] (the "Training Costs") and is your responsibility. The Company agrees to finance the Training Costs on your behalf in accordance with the terms contained in the Promissory Note *attached hereto* as Exhibit A (the "Promissory Note") and the Training Reimbursement Agreement *attached hereto* as Exhibit B. The Promissory Note provides for payment of the full amount of the Training Costs, plus interest, over a period ending two (2) years after your Effective Hire Date. For so long as you remain employed with the Company during such two (2) year period, the Company agrees to credit you (at no cost to you) with making the payments which are required to be made by you under the terms of the Promissory Note. If you cease to be employed by the Company for any reason whatsoever (whether your employment is terminated voluntarily or involuntarily, or with or without cause) during such two (2) year period, the Company will no longer have any obligation to credit you with making payments under the Promissory Note, your remaining obligations under [the] Promissory Note will be accelerated and become immediately due and payable, and

you will be responsible to pay immediately the entire unpaid
balance of the Promissory Note.

(Emphasis added.)

**¶13**         While attaching the Note and the TRA to the Offer does not, by itself, show an intent to incorporate them, the Offer's references to both documents setting forth some of the "terms and conditions" of the employment contract reflects such an intent. *See United Cal. Bank,* 140 Ariz. at 258. Simply put, without the Note and the TRA, the "Initial Training" provision in the Offer is meaningless. But taken together, Worldwide made clear it would not hire the defendants unless they completed the training financed under the Note and defined in the TRA terms.

**¶14**         Despite the Offer's plain language, Worldwide points to *Mesa Airlines, Inc. v. Condron,* 1 CA-CV 16-0326, 2017 WL 4638171 (Ariz. App. Oct. 17, 2017) (mem. decision), to argue that the Note and the TRA should be interpreted as separate contracts. In *Mesa Airlines,* the airline and the pilots' union, of which the defendant pilot was a member, previously entered into a collective bargaining agreement. *Id.* at *1, ¶ 3. That agreement provided that Mesa Airlines may require pilots to execute training agreements. *Id.* Although the facts of *Mesa Airlines* involved a similar promissory note and an oral employment agreement between the pilot and the airline, the note in *Mesa Airlines* "was *not* integrated into nor conditioned in any respect" on the oral at-will employment agreement. *Id.* at *3, ¶ 14 (emphasis added). By contrast, Worldwide and the defendants in these consolidated cases entered into one contract—the Offer—which incorporated and referenced the terms and conditions in the two exhibits attached—the Note and the TRA. Thus, the description of the agreement in *Mesa Airlines* is substantively different than the Offer, the Note, and the TRA here. The Offer required the defendants to agree to the "terms and conditions" in the attached TRA and Note. Together, these three documents constitute one agreement and must be construed accordingly.

## II.    Statute of Limitations

**¶15**         Worldwide argues that even if the Offer, the Note, and the TRA constitute one agreement, the longer statutes of limitations in A.R.S. §§ 12-548(A)(1) (actions for debt based on written contract) and 47-3118(A) (actions to enforce a promissory note) apply. We review questions of law, such as a dismissal under Rule 12(b)(6) and the application of statutes of limitations, de novo. *CVS Pharmacy, Inc. v. Bostwick,* 251 Ariz. 511, 515-16, ¶ 10 (2021); *Monroe v. Ariz. Acreage LLC,* 246 Ariz. 557, 562, ¶ 13 (App. 2019).

¶16            The one-year statute of limitations applies to actions on "employment contracts." A.R.S. § 12-541(3). In *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, this court construed the statute and ascribed the "ordinary" dictionary meaning to the term employment contract: "'a contract between an employer and employee in which the terms and conditions of employment are stated.'" 218 Ariz. 293, 295, ¶ 7 (App. 2008) (quoting *Black's Law Dictionary* 321 (7th ed. 1999)). Worldwide contends that *Redhair* is distinguishable.

¶17            In *Redhair*, the parties disputed whether A.R.S. § 12-541(3) applied to an oral contract to pay an employee bonus. 218 Ariz. at 294-95, ¶¶ 3-4. While *Redhair* may be factually distinguishable, its legal definition of an "employment contract" for purposes of applying A.R.S. § 12-541(3) is not. The Offer, including the incorporated Note and TRA, defined the terms and conditions of employment, specifically that Worldwide agreed to finance the training consistent with the Note and the TRA, with the expectation of employing the defendants. In fact, the Offer required the defendants to sign the Note and the TRA. Accordingly, those documents are part of the employment contract subject to the one-year statute of limitations in A.R.S. § 12-541(3).

¶18            Worldwide nonetheless argues that the superior court should have bifurcated the individual provisions in the contracts into employment and non-employment terms to determine which statute of limitations to apply. According to Worldwide, its action is for recovery of a debt, not for breach of an employment contract, so A.R.S. §§ 12-548(A)(1) and 47-3118(A) apply.

¶19            Worldwide's cause of action arose from the defendants' breaches of the employment terms and conditions in the Offer, the Note, and the TRA. Specifically, the Offer required them to complete the training, which Worldwide agreed to finance as a condition of the employment offer. The Offer also required the defendants to remain employed for two years, at which time Worldwide would absorb the entire cost of the training. Both Toulatos and Silberman ended their employment before the two years. Yet, Worldwide waited over three years to bring a claim against Toulatos and over one year to sue Silberman. Although Worldwide contends it is seeking to collect a debt, the debt arose due to the alleged breach of the employment contract. In other words, but for the defendants' separation from employment, Worldwide could not have collected on the Note and would have remained obligated to continue to absorb payments on their behalf. Because Worldwide's cause of action only arose when the defendants' employment ended, there was no "non-employment issue" to bifurcate.

Simply put, Worldwide's offer to finance the training costs constituted part of the defendants' compensation and was integrated into the employment contract. *Cf. Blood Sys., Inc. v. Roesler,* 972 F. Supp. 2d 1150, 1155-56 (D. Ariz. 2013) (finding that an ERISA plan in which the employer agreed to pay the employee "additional compensation in the form of paying for medical care in return for [the employee's] continued employment[]" constituted an employment contract and claim for breach of the plan was subject to A.R.S. § 12-541(3)).

**¶20**　　　　For this reason, *Lytikainen v. Schaffer's Bridal, LLC,* 409 F. Supp. 3d 767, 775 (D. Ariz. 2019), does not compel a different result. *Lytikainen* involved two separate claims: one for breach of a promise to pay the plaintiff's salary as the manager of a bridal store and another for breach of an agreement to sell the plaintiff a 50-percent interest in the bridal store in exchange for $100,000 cash and $400,000 worth of alteration services. *Id.* at 770-71. Because the purchase agreement was not a component of the plaintiff's compensation as the store manager, the claims were distinct. *Id.* at 774-75.

**¶21**　　　　Worldwide also contends that because A.R.S. §§ 12-548(A)(1) and 47-3118(A) conflict with A.R.S. § 12-541(3), the superior court should apply the longer statutes of limitations. *See Monroe,* 246 Ariz. at 562, ¶ 17 (explaining that when statutes of limitations conflict, application of the "longer period of limitations is preferred") (internal quotation and citation omitted). Because Worldwide's cause of action is for breach of an employment contract—not recovery of a separate debt—there is no conflict. The superior court applied the correct statute of limitations.

## III.　　Motion for Leave to Amend the Complaint

**¶22**　　　　Worldwide argues the superior court erred by applying the wrong standard in denying its motions to amend and that newly-alleged facts precluded dismissal. As a rule, amendments should be liberally permitted absent a finding of undue delay, dilatory motive, undue prejudice, or futility in the amendment. Ariz. R. Civ. P. 15(a)(2) ("Leave to amend must be freely given when justice requires."); *Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474-75 (App. 1992); *Owen v. Superior Court*, 133 Ariz. 75, 79 (1982); *see also Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶ 26 (App. 1999) (explaining the superior court should grant a non-moving party the opportunity to amend a complaint "if such an amendment cures its defects"). Although the superior court has the discretion to deny a motion to amend, we review de novo whether a request to amend is futile. *See Bishop*, 172 Ariz. at 474; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893

(9th Cir. 2010). In considering futility, we presume as true all well-pled factual allegations set forth in the proposed amendments. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

**¶23**     Even taking the new facts alleged in the proposed amended complaint as true, Worldwide's claims are still time-barred. These additional facts do not change the language in the Offer stating the Note and the TRA are part of the Offer. Worldwide is not in the business of financing pilot training independent of employment, and its Offer was contingent upon the defendants "signing the attached [TRA]."

**¶24**     Nor did the newly-added facts change the nature of the cause of action—breach of an employment contract. Given this, the proposed amendments were futile. Accordingly, even if the superior court erred in treating the motion for leave to amend as a motion for reconsideration in the Toulatos action, it properly denied the motion. *See Dube v. Likins*, 216 Ariz. 406, 417, ¶ 36 n.3 (App. 2007) (noting that the appellate court may affirm the superior court if it is correct for any reason).

**¶25**     Having affirmed the dismissal, we need not address Worldwide's argument that the defendants were ineligible for an award of attorneys' fees under the contract.

## CONCLUSION

**¶26**     We affirm the judgment dismissing Worldwide's complaints and awarding attorneys' fees to Toulatos and Silberman. As the prevailing parties on appeal, we award attorneys' fees to the defendants consistent with the terms of the Offer and costs under A.R.S. § 12-342 upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA